PAUL EVANS, Plaintiff-Appellant, v. HERBERT KOSHGARIAN *et al.*, Defendants-Appellees (Commonwealth Edison Company, Defendant).

First District (2nd Division)   No. 1—91—1992

Opinion filed September 8, 1992.

Roger D. Rudich, Ltd., of Chicago (Roger D. Rudich and Martha Garcia, of counsel), for appellant.

Kralovec, Marquard, Doyle & Gibbons, Chartered, of Chicago (Nancy J. Arnold and Sara T. Wiggs, of counsel), for appellees.

JUSTICE SCARIANO delivered the opinion of the court:

Paul Evans (plaintiff) appeals from the trial court's granting of summary judgment in favor of Herbert Koshgarian (Koshgarian), lessor of the premises at issue in this cause, and Hinsdale Motor Cars, Inc., d/b/a Jack Winters Hinsdale Motor Cars (Hinsdale), lessee of the premises (collectively, defendants).

On the night of June 22, 1987, and the early morning of June 23, 1987, while in the employ of J.P. Building Maintenance, plaintiff was cleaning defendants' building and facilities located at 300 East Ogden Avenue. At approximately 3 a.m., plaintiff had completed work and was proceeding to his car parked along the south curb of Ogden Avenue. He crossed the sidewalk and was walking in the grassy parkway between the sidewalk and the roadway when his foot caught on a piece of curved metal, causing him to fall and sustain injuries.

On June 23, 1989, plaintiff filed a complaint sounding in negligence against defendants, as well as against Commonwealth Edison Company, Illinois Bell Telephone Company, and Continental Cablevision, Inc., but the latter two parties were subsequently dismissed by plaintiff. In the two counts against the remaining defendants he asserts that they

"[n]egligently and carelessly[: 1] maintained and inspected the said parkway; [2] *** permitted a metal bar to be installed on the aforesaid parkway creating an unreasonably dangerous condition; [3] *** failed to warn the plaintiff of the existence of an unreasonably dangerous condition along and upon the said parkway; and [4] *** failed to inspect the aforesaid premises for unreasonably dangerous conditions."

On October 18, 1990, defendants moved for summary judgment, Koshgarian asserting that he did not possess an ownership interest in the parkway in question[1] and therefore owed no duty to plaintiff. Hinsdale also claimed that it owed no duty to plaintiff because (1) it was merely Koshgarian's tenant, and as such, it did not possess an ownership interest in the parkway; and (2) it neither "maintained [n]or permitted to be installed the metal object in question." On May

---

[1]In his brief plaintiff admits as much, stating that "[a]lthough, *owned by the municipality*, Defendant, HINSDALE MOTOR CARS, INC., regularly assigned its porters to mow the grass on the parkway." (Emphasis added.)

21, 1991, the court granted the defendants' motions and made a finding that there was no just cause to delay enforcement or appeal of its order. Commonwealth Edison had also filed a motion for summary judgment, but the record does not indicate the disposition, if any, thereof. On June 18, 1991, plaintiff filed a timely notice of appeal.

Plaintiff maintains that the trial court's granting of summary judgment in favor of defendants was erroneous because they had voluntarily undertaken the duty to reasonably maintain the parkway; they were "in possession and in control of [the parkway and i]t is the maintaining, possessing, and controlling [of] the parkway which created the duty upon the defendants to act in a careful manner." In attempting to show possession and control of the parkway, plaintiff relies on the fact that (1) Hinsdale voluntarily hired "porters" to maintain and mow the grass in the parkway, and that (2) Hinsdale had knowledge of the existence of the metal bar.[2]

Plaintiff further suggests that *Smith v. Rengel* (1981), 97 Ill. App. 3d 204, is analogous to the instant case and should control its outcome. The plaintiff in *Rengel*, a guest of the defendant's tenant, sustained injuries while removing a refrigerator from his host's apartment. The plaintiff had backed his pickup truck partially onto a parkway to facilitate the removal, and as he and two others were carrying the refrigerator across the parkway to the truck, he stepped off the sidewalk and into a hole in the parkway. There was evidence in the record to indicate that the defendant-landlord's wife and son had "mowed the grass in the boulevard, had shoveled snow from it, and had filled with dirt any holes found in it," thus creating a "duty in law on the adjacent landowner to use ordinary care to maintain the boulevard in a reasonably safe condition for his tenants and their invitees and social guests." *Rengel*, 97 Ill. App. 3d at 206.

Summary judgment is appropriate when all the evidence on file, the pleadings, depositions, admissions and affidavits, strictly construed against the moving party, present no genuine issue of material fact. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005; *Carruthers v. B.C. Christopher & Co.* (1974), 57 Ill. 2d 376, 380.) Whether one party owes a duty to another, however, is a question of law which is to be determined by the court. (*Marshall v. City of Centralia* (1991), 143 Ill. 2d 1, 6; *Cunis v. Brennan* (1974), 56 Ill. 2d 372, 374; *Dodd v. Cavett Rexall Drugs, Inc.* (1988), 178 Ill. App. 3d 424, 432.) "Accord-

---

[2]The record reflects that in the deposition of Kenneth Lysne, one of the porters previously employed prior to plaintiff, the existence and location of the metal bar was known to the porters with whom he worked, but not to others.

ingly, a trial court will grant summary judgment if under the pleadings, depositions, admissions, and affidavits, it appears that the defendant owes no duty to the plaintiff." *Dodd,* 178 Ill. App. 3d at 432.

We disagree with plaintiff, for we believe that the trial court was correct in holding that defendants owed no duty to him. It has recently been held that the duty owed by an owner or occupier of land abutting a city-owned parkway is no different than the duty owed if the premises in question were a city-owned sidewalk (*Burke v. Grillo* (1992), 227 Ill. App. 3d 9, 17); we therefore apply to the case at bar those authorities dealing with the duty owed by one whose property abuts a public sidewalk.

■■ "In general, an abutting owner [or occupier] is not held liable for personal injuries incurred on a public sidewalk under the control of a municipality." (*Repinski v. Jubilee Oil Co.* (1980), 85 Ill. App. 3d 15, 21; *Dodd,* 178 Ill. App. 3d at 432; *Schuman v. Pekin House Restaurant & Lounge* (1981), 102 Ill. App. 3d 532, 534.) This rule is inapplicable, however, where (1) the abutting landowner or occupier appropriates the property for its own business purpose (*Dodd,* 178 Ill. App. 3d at 432; *McDonald v. Frontier Lanes, Inc.* (1971), 1 Ill. App. 3d 345, 352; *Cooley v. Makse* (1964), 46 Ill. App. 2d 25); or where (2) there is evidence that the dangerous condition on the sidewalk abutting his property was directly occasioned by him, that is, where he caused or contributed to the defective condition of the public sidewalk. (*Burke,* 227 Ill. App. 3d at 17; *Thiede v. Tambone* (1990), 196 Ill. App. 3d 253, 261, *appeal denied* (1990), 133 Ill. 2d 574; *Repinski,* 85 Ill. App. 3d at 21-22.) On appeal, plaintiff does not argue that defendants caused or contributed to the defective condition which caused his fall; rather, he argues only that

> "by voluntarily maintaining adjacent non-owned property, [defendants] impose[d] a duty upon [themselves] to perform the maintenance in a reasonable manner, including warning the public of a hidden danger or in the alternative removing said danger when such removal could be accomplished with relative ease."

■■ In the instant case no evidence exists that defendants appropriated the property for their own business purpose. This fact situation is neither like that in *McDonald,* where the defendant had used the sidewalk for parking, thus blocking it and preventing its normal use, nor like that in *Cooley,* in which the sidewalk's only purpose was to provide access to the front door of the tavern, and thus the defendants had appropriated it for their own use by "assum[ing] the right to

use, enjoy and employ the sidewalk as a necessary adjunct of their possession, control and ownership of the tavern building." *Cooley*, 46 Ill. App. 2d at 30.

Defendants here did not take any affirmative steps to appropriate the parkway such as blocking it, parking on it, using it to display goods, or otherwise preventing the public from using it in its ordinary manner (*Dodd*, 178 Ill. App. 3d at 433); and an abutting landowner does not assume control over a parkway merely because the majority of users of it may have been customers (*Dodd*, 178 Ill. App. 3d at 433), or because he gratuitously sweeps (*Schuman*, 102 Ill. App. 3d at 534-35), shovels or salts it (*Dodd*, 178 Ill. App. 3d at 433). Defendants hired porters merely to mow the grass and otherwise keep the parkway looking neat. Neither did they use it for means of ingress or egress for either their employees or their patrons, since they provided a parking lot for employee and customer parking in order that persons frequenting Hinsdale need not traverse the parkway.

We also decline to follow *Rengel*, which, as noted earlier, plaintiff relies upon. Instead, we agree with the holding in *Burke*, in which the court recently criticized *Rengel*. The facts in *Burke* reflect that a 72-year-old woman sued both the City of Elgin and the defendant Grillo for injuries incurred "when she fell onto a sidewalk because of a defective condition of the sidewalk," in that there existed "a large difference in grade between the grass and the sidewalk." (*Burke*, 227 Ill. App. 3d at 11-12.) The plaintiff relied on *Rengel* for the proposition that Grillo "owed her a duty to keep and maintain this area in a reasonably safe condition even though it was just beyond the premises actually owned by [him]," because he cut the grass and shoveled the sidewalk in front of his apartment building. (*Burke*, 227 Ill. App. 3d at 14.) Citing *Dodd* and *Schuman* favorably, the *Burke* court declined to follow the *Rengel* court's conclusion that merely because a landowner mows the grass in a boulevard, shovels snow from it, and fills with dirt any holes found in it, he had established a duty to maintain the property, even though it belongs to the city. Rather, it concluded that the *Rengel* court "interpreted our decisions in *Cooley* and *McDonald* too broadly" (*Burke*, 227 Ill. App. 3d at 16), and held that Grillo's merely cutting the grass and shoveling the sidewalk in front of the apartment building was not evidence enough to show that he had "affirmatively appropriated the public sidewalk or the city-owned area beside it for his own use." (*Burke*, 227 Ill. App. 3d at 17.) We, too, conclude that defendants have not affirmatively appropriated the public parkway for their own use merely because they occasionally mow it.

For the above-stated reasons, we hold that the trial court was correct in granting summary judgment in favor of defendants.

Affirmed.

HARTMAN, P.J., and DiVITO, J., concur.