SIXTH DIVISION

No. 1-09-1478

SANDRA GILMORE,                              )
                                             )      Appeal from the
                    Plaintiff-Appellant,     )      Circuit Court of
                                             )      Cook County, Illinois.
v.                                           )
                                             )      No. 07 L 9957
CHRISTOPHER POWERS and RACHEL                )
POWERS,                                      )      Honorable James D. Egan,
                                             )      Judge Presiding.
                    Defendants-Appellees.    )

JUSTICE JOSEPH GORDON delivered the opinion of the court:

This matter comes before the court on the appeal of plaintiff Sandra Gilmore from an

order of the circuit court granting summary judgment in favor of defendants, Christopher and

Rachel Powers.  In her complaint, plaintiff sought recovery for personal injuries which she

sustained while moving defendants' personal belongings from a moving van to defendants'

home. Plaintiff alleged that she fell on a stone walkway which straddled the city-owned parkway

in front of defendants' house.  Defendants argued that they owed plaintiff no duty to maintain the

walkway in a safe condition because the area which it straddled was owned, not by them, but by

the City of Evanston.  The circuit court agreed with defendants and granted summary judgment

in their favor.  For the reasons articulated below, we affirm.

BACKGROUND

The evidence in this case is not in dispute.  Defendants own a home in Evanston that is

fronted on the north side of Payne Street, a public right-of-way that runs from east to west.  A

public-owned sidewalk lies parallel to Payne Street, also running from east to west.  Between the

street and the public sidewalk lies a parkway, a strip of grassy land running parallel between the street and the sidewalk. A stone walkway transverses the parkway, running north to south.

Plaintiff is a co-owner of a moving company that was hired by defendants to move their belongings from California to their home on Payne Street. On the day of the move, the movers parked the moving van on Payne Street and unloaded from there. Alternate access to defendants' house was also available by parking in the alley that ran perpendicular to the street and formed the western boundary of defendants' property. While the plaintiff's workers were moving defendants' belongings into the house, the workers crossed over the parkway by walking down metal ramps extending down from the back of the truck. When the move was completed, the ramps were placed back into the truck. As the moving company was finishing its work, plaintiff injured her foot while on the walkway which crosses the parkway.

On September 21, 2007, plaintiff filed the instant lawsuit against defendants for her injuries alleging that her injuries were the proximate result of the defendants' failure to maintain "their property" in a condition that was safe for invitees such as herself. Plaintiff specifically asserted that defendants violated this duty by failing to inspect "their property" for hazardous conditions, permitting the walkway to remain in a dangerous condition, failing to fix the walkway after becoming aware of its dangerous condition, and failing to properly maintain the walkway on the property.

Defendants filed a motion for summary judgment arguing that they owned no duty to maintain the walkway because it was not located on their property but on the parkway, the area between the curb of the street and the sidewalk, which is owned by the City of Evanston. They

also asserted that they in no way assumed a duty to maintain the walkway. With respect to this motion, both parties cited to a transcript of the deposition of Sat Nager, a senior engineer with the City of Evanston's Division of Transportation, Public Works, who averred that the city owns the parkway upon which the walkway at issue is located. He further stated that walkways on parkways are prevalent throughout the city. Nager said that he had no record of when the walkway at issue in this case was installed, but that walkways are generally installed by individual homeowners, not the city. Nager stated that it is his understanding that when a walkway falls into disrepair, the owners of the property take responsibility to replace the stones "[m]ost of the time," but that he was aware of no legal obligation for homeowners to do so. He also claimed that the city is in the practice of replacing the walkways if they are contiguous to a street which is being repaired by the city.

The defendants also submitted separate affidavits in support of their motion for summary judgment each averring that they neither installed nor maintained the walkway at issue and never used the parkway to the exclusion of others. They both claimed that they merely cut the grass on the parkway and raked leaves off of it. Defendant Chris Powers also repeated these claims during a deposition, a transcript of which was attached to the motion, and further stated that he recommended to plaintiff that the movers park the moving van in the alley behind the home and unload there because it was closer to the house and thus would be more convenient for them. In her deposition, a transcript of which was also attached, Rachel Powers stated that she walked on the walkway multiple times a day as she walked to and from her car, which she parked on the street.

The circuit court granted the defendants' motion for summary judgment in a written order without explanation. Plaintiff now appeals.

ANALYSIS

On appeal, plaintiff contends that the circuit court erred in granting summary judgment in favor of defendants. Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2006). "In determining whether a genuine issue as to any material fact exists, a court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent." Adams v. Northern Illinois Gas Co., 211 Ill. 2d 32, 43 (2004). Summary judgment procedure is to be "encouraged as an aid in the expeditious disposition of a lawsuit," but is a "drastic means of disposing of litigation and, therefore, should be allowed only when the right of the moving party is clear and free from doubt." The decision to grant a motion for summary judgment is reviewed *de novo*. Adams, 211 Ill. 2d at 43. The issue of whether a party owes a duty to another party is a question of law to be determined by the court. Dodd v. Cavett Rexall Drugs, Inc., 178 Ill. App. 3d 424, 432 (1988).

On appeal, plaintiff contends that defendants' owed her the duty to maintain the walkway which transverses the owned parkway in front of their home in a safe condition. Although she concedes that the walkway is located on a parkway owned by the city, she nevertheless argues that defendants, as adjacent property owners, owed such a duty of care because she claims they

appropriated the parkway for their own use by mowing the grass growing upon it, raking leaves from it, and crossing it daily in order to get from the sidewalk to the street. Plaintiff also claims that defendants were obligated to maintain the walkway in a safe condition because it provided a means of ingress and egress from the property. We disagree that defendants owed a duty of care regarding the condition of the walkway.

Although a private landowner owes a duty of care to provide a reasonably safe means of ingress and egress from his property (Burke v. Grillo, 227 Ill. App. 3d 9, 16 (1992); Dodd, 178 Ill. App. 3d at 432; Decker v. Polk Brothers., 43 Ill. App. 3d 563, 565 (1976); McDonald v. Frontier Lanes, Inc., 1 Ill. App. 3d 345, 351 (1971); Cooley v. Makse, 46 Ill. App. 2d 25, 30 (1964); Stedman v. Spiros, 23 Ill. App. 2d 69, 81 (1959)), he generally owes no duty to ensure the safe condition of a public sidewalk or parkway abutting that property (Burke, 227 Ill. App. 3d at 16; Evans v. Koshgarian, 234 Ill. App. 3d 922, 925 (1992); Thiede v. Tambone, 196 Ill. App. 3d 253, 260 (1990); Dodd, 178 Ill. App. 3d at 432; Schuman v. Pekin House Restaurant & Lounge, 102 Ill. App. 3d 532, 534 (1981); Repinski v. Jubilee Oil Co., 85 Ill. App. 3d 15, 21 (1980); Decker, 43 Ill. App. 3d at 565; Cooley, 46 Ill. App. 2d at 30; Stedman, 23 Ill. App. 2d at 83).

Plaintiff contends that this foregoing general rule does not apply in this case because defendants assumed control over the parkway at issue. We agree with the proposition that an abutting landowner may be held responsible for the condition of a public sidewalk or parkway if he assumes control of it for his own purposes. Burke, 227 Ill. App. 3d at 16-17; Evans, 234 Ill. App. 3d at 925; Thiede, 196 Ill. App. 3d at 260; Dodd, 178 Ill. App. 3d at 432; Decker, 43 Ill.

App. 3d at 566; McDonald, 1 Ill. App. 3d at 352; Cooley, 46 Ill. App. 2d at 30. However, an assumption of control for purposes of determining a duty of care must consist of affirmative conduct which prevents the public from using the property in an ordinary manner such as blocking the land, parking on it, or using it to display goods. Dodd, 178 Ill. App. 3d at 433; Evans, 234 Ill. App. 3d at 926. Thus, as will be more fully discussed below, the appellate court has found that no duty to maintain the city-owned property exists where the landowner merely maintains the property by mowing grass or shoveling and salting it in the winter. Burke, 227 Ill. App. 3d at 15-16; Evans, 234 Ill. App. 3d at 926; Dodd, 178 Ill. App. 3d at 433.

Applying these principles, Illinois courts have found appropriation of city-owned property by commercial landowners in circumstances where the owner has physically used that property as part of its business as a means of ingress and egress for its customers. In Cooley v. Makse, 46 Ill. App. 2d 25, 26-27 (1964), the plaintiff injured himself while walking on a publically owned pathway between the sidewalk and the front door of a tavern. The court held that the tavern had a duty to ensure the safe condition of the pathway because it was sole means of ingress and egress from the tavern. Cooley, 46 Ill. App. 2d at 30. The court noted that the tavern had "assumed the right to use, enjoy and employ the sidewalk as a necessary adjunct of their possession, control and ownership of the tavern building. Cooley, 46 Ill. App. 2d at 30. Therefore, because the tavern had prescribed the pathway as the route of ingress and egress for its invitees, it had a duty to "properly illuminate, give adequate warning of, or cause to be repaired a known, dangerous condition." Cooley, 46 Ill. App. 2d at 31.

In McDonald v. Frontier Lanes, Inc., 1 Ill. App. 3d 345 (1971) the plaintiff fell when she

stepped into a depression located on a city-owned parkway between the street and the parking lot of a bowling alley that she had just departed. McDonald, 1 Ill. App. 3d at 350. The facts revealed that the bowling alley's customers regularly drove and walked over the parkway as a means of ingress and egress from the business to enter and exit the parking lot and that it was common for customers to park on the parkway. McDonald, 1 Ill. App. 3d at 349-50. The court held that these acts constituted an assumption by the bowling alley of use and control of the sidewalk and parkway and therefore it owed a duty to invitees to ensure its safe condition. McDonald, 1 Ill. App. 3d at 352.

Similarly in Bloom v. Bistro Restaurant Ltd. Partnership, 304 Ill. App. 3d 707, 709 (1999), the plaintiff, a restaurant patron, was injured by falling ice as she exited the building in which the restaurant was located. Plaintiff sued both the owner of the building and the restaurant. Bloom, 304 Ill. App. 3d at 709. The restaurant argued that it could not be held liable for the falling ice because it did not own the portion of the building from which the ice had fallen. Bloom, 304 Ill. App. 3d at 712. The court rejected this argument holding that the restaurant could be held liable on grounds that it had a duty to provide a safe means of ingress and egress from its premises. Bloom, 304 Ill. App. 3d at 712. The appellate court reached this same conclusion in McLean, which also involved the plaintiff being struck by falling ice as he exited the defendant's establishment. McLean v. Rockford Country Club, 352 Ill. App. 3d 229 (2004). See also Haupt v. Sharkey, 358 Ill. App. 3d 212, 214 (2005) (tavern had duty to protect patron from criminal attack by another patron even though victim was attacked as he stepped out of the building and onto the public sidewalk).

7

Turning to the facts at bar, we observe that plaintiff has not alleged or presented any evidence that defendants performed any affirmative act to appropriate the use of the walkway on the parkway at issue. Defendants have not blocked the parkway, parked on it, or otherwise prevented the public from using it in an ordinary manner as did the business owner in McDonald. McDonald, 1 Ill. App. 3d at 352. Nor did defendants appropriate the parkway as the sole means of ingress and egress from their property as did the business owners in Cooley, Bloom, and McLean. Cooley, 46 Ill. App. 2d at 30-31; Bloom, 304 Ill. App. 3d at 712; McLean, 352 Ill. App. 3d at 229. We observe that the decisions in McDonald, Cooley, Bloom, and McLean all imposed a duty of care upon commercial businesses that appropriated public land, not residential homeowners such as defendants. However, that aside, the evidence shows that the property was accessible through an alley which constitutes defendants' western property line and that defendant Christopher Powers even recommended to the movers that they use that access point because it was closer to the house and thus would be more convenient for them. Furthermore, an invitee's egression from defendants' property is complete as soon as he or she steps onto the city-owned sidewalk separating defendants' property from the parkway in dispute.

We also find unpersuasive plaintiffs argument that defendants appropriated the parkway in question by walking over it or by maintaining it by cutting the grass and raking leaves off of it. Appropriation does not occur merely because a landowner uses the walkway more than the public at large. Dodd, 178 Ill. App. 3d at 433; Evans, 234 Ill. App. 3d at 926. Additionally, as noted above, the First and Second Districts of the Appellate court have held that acts of maintenance are insufficient to show appropriation. Burke, 227 Ill. App. 3d at 15-16 (no

appropriation where defendants merely mowed grass and shoveled snow where hole that caused the injury was located); Evans, 234 Ill. App. 3d at 926 (no assumption of control over parkway even though abutting property owner gratuitously sweeps, shovels, or salts it); Dodd, 178 Ill. App. 3d at 433 (same).

Plaintiff cites, however, to the Fourth District's decision in Smith v. Rengel, 97 Ill. App. 3d 204, 206 (1981), which holds that a landowner assumes control over city-owned property merely by mowing it and shoveling it. We note, however, that the First District in Evans and the Second District in Burke both considered the Fourth District's decision in Smith and explicitly rejected its holding as unpersuasive and overly broad. Evans, 234 Ill. App. 3d at 926; Burke, 227 Ill. App. 3d at 15-16.

Even the context of commercial businesses Illinois courts have not found appropriation of a publically owned property by a private business owner when the area of land at issue is generally open to the public, is not immediately adjacent to the entrance of the owner's place of business, and does not provide the sole means of ingress and egress from the property. In Stedman v. Spiros, 23 Ill. App. 2d 69, 75 (1959), the plaintiff was injured when he fell off a precipice at Starved Rock State Park when the soil upon which he was standing gave away. Although he was standing on public land at the time, he sued the private hotel in which he was staying, which was located approximately 50 feet away, arguing that it nevertheless had a duty to reasonably ensure his safety at that location. Stedman, 23 Ill. App. 2d at 72. The court noted that the hotel did not possess or control the area where the fall occurred and stated that the issue presented was "how far beyond the premises over which the defendant had possession and

control does defendant's duty of care extend to provide a reasonably safe means of ingress and egress for plaintiff." Stedman, 23 Ill. App. 2d at 83. The court then opined that "if the brink of the precipice were a step or two from the defendant's door, or from the stone patio to which defendant's door opened, we would have a different case than is now presented to us" but held that the hotel had no duty to warn its guests about the dangers, such as the precipice, inherently contained by a 700-acre state park. Stedman, 23 Ill. App. 2d at 83.

The appellate court reached a similar conclusion in Dodd v. Cavett Rexall Drugs, Inc., 178 Ill. App. 3d 424 (1988). In that case, the plaintiff fell on a public sidewalk outside the defendant's store, which was located in a shopping center. Dodd, 178 Ill. App. 3d at 427. Plaintiff argued that because the sidewalk was used for ingress and egress from the store, defendant owed a duty of care to ensure that the sidewalk was in a safe condition. Dodd, 178 Ill. App. 3d at 427. The court rejected this argument and held that the defendant had not performed any affirmative act of appropriation over the sidewalk where plaintiff was injured and therefore owed no such duty of care. Dodd, 178 Ill. App. 3d at 433. The court specifically noted that the sidewalk was not the only means of ingress and egress to the store and that the sidewalk was open to the general public. Dodd, 178 Ill. App. 3d at 433. The court further concluded that "the mere fact that the majority of users of the sidewalk may have been [the store's] customers does not render the sidewalk the property of the drugstore or indicate that the drugstore has appropriated the sidewalk." Dodd, 178 Ill. App. 3d at 433. See also St. Phillips v. O'Donnell, 137 Ill. App. 3d 639, 643 (1985) (tavern's duty to ensure safe means of ingress and egress did not extend to parking lot shared with other tenants of shopping mall). Defendants did not

10

appropriate the public-owned parkway and walkway at issue for their own use as plaintiff suggests.

Plaintiff nevertheless seeks to support her contention that defendants owed a duty to maintain the walkway in a safe condition by citing Donovan v. Raschke, 106 Ill. App. 2d 366 (1969), and Zakoff v. Chicago Transit Authority, 336 Ill. App. 3d 415 (2002), which she argues stand for the general proposition that a landowner has a duty to keep the walkway and parkway abutting their property free from conditions which could create a danger to another. Plaintiff misuses those cases. In Donovan, the court held that a landowner has a duty to keep the sidewalk abutting his property "free from any condition which may create a danger or a hazard to persons lawfully upon the street." Donovan, 106 Ill. App. 2d at 369-70. Applying this rule, the court reversed the circuit court's granting of summary judgment in favor of defendant finding that an issue of fact existed whether defendant violated that duty when the plaintiff was injured when a roll of wire mesh fell from his property onto the sidewalk. Donovan, 106 Ill. App. 2d at 371. In Zakoff, the appellate court cited approvingly the Restatement (Second) of Torts §368 (1965), which imposes liability on a possessor of land " 'who creates or permits to remain thereon an excavation or other artificial condition so near an existing highway that he realizes or should realize that it involves an unreasonable risk to others accidentally brought into contact with such condition while traveling with reasonable care upon the highway.' " Zakoff, 336 Ill. App. 3d at 423, quoting Restatement (Second) of Torts §368 (1965). The court found that the Chicago Transit Authority did not violate that duty by constructing a substation approximately 50 feet from the Kennedy Expressway because the authority could not have reasonably foreseen that a

11

motorist would have deviated so far so as to hit the station. Zakoff, 336 Ill. App. 3d at 424.

We find Donovan and Zakoff inapposite. Both cases support the proposition that a landowner may be held liable when a danger that exists on its land endangers those traveling on a public right-of-way. In Donovan, the plaintiff's injury resulted when the defendant failed to ensure that those passing on the public sidewalk were not endangered by the construction activity on his property. Donovan, 106 Ill. App. 2d at 371. In Zakoff, the court held that a landowner could be held liable if he could reasonably anticipate that an artificial condition on his land would endanger motorists who may deviate from the road. Zakoff, 336 Ill. App. 3d at 424. In both situations, the dangerous condition was located on the defendant's private property. In this case, by contrast, the undisputed evidence shows that the alleged danger, namely a broken walkway, was not located on defendants' property, but instead on public property. Thus, neither case supports the proposition that a landowner has a duty to ensure the safe condition of public property which abuts his land.

Plaintiff next contends that defendants had a legal duty to maintain the walkway in the parkway in a safe condition because, she argues, the ordinances of the City of Evanston obligated defendants, as land owners, to do so. In support of this proposition, plaintiff cites to two sections of the Evanston City Code. The first ordinance cited is Ordinance No. 7-3-9 (Evanston City Code Ordinance No. 7-3-9), which provides that "[w]henever the owner or occupant of any lot in the City shall be notified by the Director of Public Works to raise, lower or repair any sidewalk in front of, adjacent to, or upon any premises owned or occupied by him, it shall be the duty of such owner or occupant to cause the improvement to be made in the manner and within the time

12

prescribed by the Director. It shall be unlawful for any owner or occupant to neglect or refuse to comply with any such requirement." The second ordinance cited by plaintiff is Ordinance No. 5-1-3 (Evanston City Code Ordinance No. 5-1-3, §302.3 (amended 2003)), which provides that "[a]ll public and private sidewalks, walkways, stairs, driveways, parking spaces, parking lots and similar areas shall be kept in a proper state of repair, and maintained free from hazardous conditions including snow."

We initially note that the first of these ordinances, namely Ordinance No. 7-3-9, which obligates a landowner to repair a sidewalk adjacent to his home if instructed to do so by the director of public works is not applicable in this case because there is no evidence or allegation that defendants received any notice to repair the walkway in this case. Furthermore, the ordinance by its terms only involves repairs to sidewalks as opposed to walkways such as the one at issue in this case. Indeed, we observe that the second ordinance cited by plaintiff requires that "all public and private sidewalks" and "walkways" be maintained in a safe condition, which indicates that the city contemplated the difference between a sidewalk, which is expressly made subject to Ordinance No. 7-3-09, and walkways which are not.

More overridingly, even if defendants had received notice regarding the condition of the walkway and it came within the scope of Ordinance No. 7-3-09, it has been held that such a statute still does not impose a duty of care upon defendants regarding the walkway for purposes of private tort liability. On this point, we find instructive the decision of Thiede v. Tambone, 196 Ill. App. 3d 253 (1990). In Thiede, the plaintiff fell on a raised surface at the intersection of defendant's driveway and the public sidewalk. Thiede, 196 Ill. App. 3d at 255-56. Plaintiff cited

13

to a provision of the City of Woodstock ordinance similar to Ordinance No. 7-3-9 which provided that " '[n]o driveway shall be so constructed or graded as to leave a step, sharp depression or other obstruction in the sidewalk' " and that " '[e]very person maintaining a driveway shall keep it in good repair where it crosses the sidewalk, and free from obstruction and openings.' " Thiede, 196 Ill. App. 3d at 258, quoting City of Woodstock 1963 Code §27.21, 6.1A.3. The plaintiff in Thiede argued that the ordinance gave rise to a duty on the part of the owner of the property abutting the sidewalk to maintain and repair the sidewalk because the ordinance was a public safety measure and plaintiff fell within the class of persons the ordinance was intended to protect. Thiede, 196 Ill. App. 3d at 259. The court disagreed that the ordinance was a public safety measure, noting that the ordinance was regulatory in nature and was intended to benefit the municipality, which was obligated to maintain the public ways within its limits. Thiede, 196 Ill. App. 3d at 259-60. See also Summers v. City of Springfield, 33 Ill. App. 3d 474 (1975) (holding that ordinance requiring abutting landowner to maintain sidewalk in good repair, but not providing that the "abutter is liable for injury to members of the public" did not impose tort law liability upon abutting landowner). Likewise, under the analysis of Thiede, Ordinance No. 7-3-9 in this case appears to be a regulatory provision intended to benefit the City of Evanston. Therefore, even if the provision was applicable in this case, it would not impose a duty of care upon defendants to maintain the walkway.

The second ordinance plaintiff relies upon for the proposition that a duty of care exists regarding the parkway is Ordinance No. 5-1-3, section 302.3, which provides that "[a]ll public and private sidewalks, walkways, stairs, driveways, parking spaces, parking lots and similar areas

14

shall be kept in a proper state of repair, and maintained free from hazardous conditions including snow." Evanston City Code Ordinance No. 5-1-3, §302.3 (amended 2003). However, this provision, like Ordinance No. 7-3-09 discussed above, also does not create a duty of care for purposes of civil tort law. In Klikas v. Hanover Square Condominium Ass'n, 240 Ill. App. 3d 715 (1992), the court analyzed whether a similar statute in the Village of Hanover Park created a duty of care for purposes of tort law and concluded that it did not. In Klikas, the plaintiff fell on a snowy sidewalk, three days after a snowfall, outside the building of the defendant condominium association, which had failed to clear the sidewalk   Klikas, 240 Ill. App. 3d at 717. Although he conceded that an abutting property owner does not have a duty to remove natural accumulations of ice and snow on a public sidewalk at common law, plaintiff nevertheless claimed that defendant owed a duty to remove the snow under a provision of the Hanover Park Village Code which provided " 'it shall be the responsibility of the owner or occupant of any premises abutting a sidewalk or sidewalks to remove from such walks, within twenty-four (24) hours after a snowfall of two (2) inches or more, substantially all ice or snow accumulated thereon.' " Klikas, 240 Ill. App. 3d at 717-18, quoting Hanover Park Village Code, art. VI, §22-98 (1987). Plaintiff argued that the provision constituted a public safety measure and that he fell within the class of persons that the ordinance was intended to protect. Klikas, 240 Ill. App. 3d at 718.

The issue presented, according to the court, was whether the purpose of the ordinance was to ensure public safety, in which case violation of the ordinance could be considered evidence of negligence. Klikas, 240 Ill. App. 3d at 719. The court agreed with defendants that

the ordinance requiring the removal of snow within 24 hours was intended to benefit the municipality. Klikas, 240 Ill. App. 3d at 719. In reaching this conclusion, the court noted that the municipality has no duty to remove ice and snow from its sidewalks, but could choose to do so as a service to the public. Klikas, 240 Ill. App. 3d at 720. The court then cited to the Restatement (Second) of Torts and Prosser & Keeton on Torts, which both provide that legislative enactments, such as those requiring the landowners to maintain sidewalks free of snow or otherwise in a condition of good repair, are intended only for the purpose of imposing upon a third party the performance of a service that the state has undertaken on behalf of the public and do not give rise to private tort liability. Klikas, 240 Ill. App. 3d at 720, citing Restatement (Second) of Torts §288, comment *d*, at 32 (1965)[1] and W. Keaton, Prosser & Keeton on Torts §36, at 223 (5th ed. 1984) (stating that "ordinances which require householders to keep sidewalks in repair, or to remove snow and ice from them, are considered to be intended only for

---

[1]As explained by the Klikas court, the Restatement (Second) states that, in the context of a negligence action, the standard of conduct of a reasonable man applicable in a given case cannot be gleaned from a legislative enactment whose purpose is found to be exclusively to "impos[e] upon the actor the performance of a service which the state, or some subdivision of it, has undertaken to give the public." Restatement (Second) of Torts §288, Comment *d*, at 32 (1965) Comment *d* to that section cites as an example of such as statute one that "provides that abutting property owners must repair defects in sidewalks and remove snow and ice from them, and that if they fail to do so they shall be liable to the city for the cost of the repairs or removal." Restatement (Second) of Torts §288, Comment *d*, Illustration 5, at 32 (1965).

the benefit of the municipality, and not for any individual who may suffer a fall").   The court

further held that the ordinance did not provide a basis for tort liability because it did not

explicitly provide for a civil remedy and the ordinance could not be considered a public safety

measure as a matter of public policy.  Klikas, 240 Ill. App. 3d at 720.  In support of this later

conclusion, the court stated:

> "While it may be reasonably foreseeable and likely that an individual would slip
>
> on uncleared snow and ice and sustain injuries, the magnitude of the burden of
>
> guarding against these kinds of injuries in this part of the country is great.
>
> Moreover, imposing a tort duty on property owners to remove all snow and ice
>
> from abutting public sidewalks within 24 hours of a snowfall would have
>
> unreasonable consequences.  In balancing these considerations, we can only
>
> conclude that it is not consistent with public policy to impose a tort duty on a
>
> property owner to remove snow and ice from city streets."  Klikas, 240 Ill. App.
>
> 3d at 720-21.

As in Klikas, the ordinance at issue, which provides that "[a]ll public and private

sidewalks, walkways, stairs, driveways, parking spaces, parking lots and similar areas shall be

kept in a proper state of repair, and maintained free from hazardous conditions including snow"

(Evanston City Code Ordinance No. 5-1-3, §302.3 (amended 2003)) does not provide for a civil

remedy for violation of the statute.  Furthermore, like the ordinance in Klikas, the ordinance at

issue here is apparently intended to benefit the municipality, not to promote public safety.

Therefore, the ordinance at issue does not give rise to a duty by defendants to maintain the

No. 1-09-1478

walkway at issue.

Having concluded that, under the facts of this case, no duty existed requiring defendants to maintain the walkway at issue in a safe condition as a matter of law, the circuit court did not err in granting summary judgment in defendants' favor.

Affirmed.

McBRIDE and ROBERT E. GORDON, J.J., concur.

No. 1-09-1478

**REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT**
**(Front Sheet to be Attached to Each Case)**

Please use the following form

SANDRA GILMORE,

        Plaintiff-Appellant,

v.

CHRISTOPHER POWERS and RACHEL POWERS,

        Defendants-Appellees.

Docket No.

COURT

Opinion Filed

No. 1-09-1478

Appellate Court of Illinois
First District, SIXTH Division

  August 13, 2010
(Give month, day and year)

JUSTICE JOSEPH GORDON DELIVERED THE OPINION OF THE COURT:

JUSTICES

McBRIDE and ROBERT GORDON concur.

Lower Court and Trial Judge(s) in form indicated in margin:

APPEAL from the Circuit Court of Cook County; the Hon___ Judge Presiding.

Appeal from the Circuit Court of Cook County;

The Hon. James D. Egan Judge presiding.

APPELLANTS
John Doe, of Chicago

For APPELLEES, :

Smith and Smith of Chicago,

Indicate if attorney represents APPELLANTS or APPELLEES and include attorney's of counsel. Indicate the word FOR NONE if not represented.

FOR APPELLANT: Meghan E. Preston, Rathbun, Cservenyak & Kozol, LLC, Attorneys at Law, 3260 Executive Drive, Joliet, IL 60431, (815) 730-1977

APPELLEE: Bruce Farrel Dorn & Associates, 120 N. LaSalle Street, Suite 1900, Chicago IL 60602, (312) 683-3000

Add attorneys for third-party appellants and/or appellees.

19