# Illinois Official Reports

## Appellate Court

---

### *Caracci v. Patel*, 2015 IL App (1st) 133897

---

| | |
|---|---|
| Appellate Court Caption | JUDY CARACCI, Plaintiff-Appellant, v. NATHU J. PATEL, ISHWAR D. DHIMAR and AMIT N. PATEL, Defendants-Appellees. |
| District & No. | First District, Third Division<br>Docket No. 1-13-3897 |
| Filed | April 29, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-L-8766; the Hon. Kathy M. Flanagan, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Paul W. Grauer & Associates, of Schaumburg (Edward Adam Czapla and Paul W. Grauer, of counsel), for appellant.<br><br>Bruce Farrel Dorn & Associates, of Chicago (Ellen J. O'Rourke and Kenneth E. Klimczak, of counsel), for appellees. |
| Panel | JUSTICE MASON delivered the judgment of the court, with opinion. Presiding Justice Pucinski and Justice Lavin concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff-appellant Judy Caracci filed a complaint against defendants-appellees Nathu J. Patel, Ishwar D. Dhimar and Amit N. Patel (collectively, defendants), seeking damages for injuries she sustained when she tripped and fell in a shopping center parking lot. The circuit court entered summary judgment in favor of defendants. On appeal, Caracci contends that the trial court erred in granting summary judgment because (1) defendants appropriated the roadway where Caracci fell, (2) defendants assumed a duty to maintain and repair the roadway, (3) defendants breached their duty to provide a reasonably safe means of ingress and egress to the stores in the property they owned, and (4) defendants breached their contractual duty to maintain the roadway. Caracci further contends that the trial court erred in denying her motion to strike defendants' amended answer. Finding no merit to Caracci's arguments, we affirm the judgment of the circuit court of Cook County.

¶ 2                                BACKGROUND

¶ 3    On August 2, 2008, Caracci tripped and fell in a pothole on her way to one of the retail stores in the Grand Plaza strip mall in Franklin Park, Illinois. The strip mall is owned by defendants and is part of a shopping center complex that also included a Jewel grocery store and a Kmart retail store at the time of Caracci's fall. Caracci parked her car in a parking area that was across a common roadway from the strip mall. While crossing the roadway, she stepped into a hole and fell, sustaining injuries to her right shoulder.

¶ 4    On July 20, 2010, Caracci filed a negligence action against defendants and one of the retail stores in the strip mall, seeking $50,000 in damages. The retail store's motion for summary judgment was granted. Defendants filed a third-party complaint against AVG Partners I, LLC (AVG), the owner of the parcel where the Kmart store was located, and Kmart Corporation. Kmart filed a counterclaim against AVG.

¶ 5    On the plat of survey, the parcel owned by SuperValu, Inc., where Jewel is located is identified as Lot 1, the parcel owned by AVG that was leased to Kmart is Lot 4, and the parcel containing the strip mall is Lot 5. A covered walkway runs along the eastern edge of the strip mall and marks the eastern boundary of Lot 5. A roadway runs along the eastern edge of Lot 5, adjacent to the walkway. The northern portion of this roadway is on Lot 1, while the southern portion is on Lot 4. The pothole where Caracci fell was located in the portion of the roadway that is on Lot 4, the parcel owned by AVG.

¶ 6    Defendants had a maintenance agreement with SuperValu under which they were required to contribute 22.5% to the cost of maintaining SuperValu's parking lot. In exchange, SuperValu granted defendants an easement allowing strip mall patrons to park in the Jewel parking lot. Defendants did not have any maintenance agreement with AVG, nor did AVG grant any easement specifically to the owners of Lot 5. Instead, AVG granted a 33-foot easement on the portion of the roadway that was on Lot 4 for ingress and egress for the general public and utilities. Under the terms of the lease between AVG and Kmart, AVG was required to "maintain all driveways, sidewalks, street and parking areas *** in a safe, sightly and serviceable condition, free of chuck holes, fissures and cracks."

¶ 7    The first amended complaint filed September 30, 2010, alleged that defendants "undertook the upkeep and maintenance" of the roadway and parking area located in front of the strip mall

stores. The complaint further alleged that defendants should have known of the dangerous pothole in the roadway, owed a duty to Caracci to maintain the roadway, and were responsible for providing necessary warnings to pedestrians of the dangerous condition because the roadway was the means of ingress and egress to the stores in the strip mall from the parking area.

¶ 8     In the original answer to the complaint filed on December 1, 2010, defendants admitted that they owned the strip mall and "owned, operated, managed and maintained the parking area for the subject premises." In their amended answer to the first amended complaint filed on May 14, 2012, defendants maintained that they owned the strip mall and certain parking areas associated with the strip mall that were located on Lot 5, but specifically denied ownership of the common roadway and parking area located on Lot 4.

¶ 9     Caracci filed a motion to strike defendants' amended answer, arguing that the original answer constituted a judicial admission of ownership that was binding. The circuit court denied the motion on June 28, 2012, on two separate grounds. First, the amended answer was not verified and, therefore, did not have the effect of a judicial admission. Second, in the original answer defendants simply admitted that they were the owners of the strip mall and the parking area for the subject premises. In the amended answer, they still admitted to ownership of the strip mall and surrounding area, but clearly delineated the specific boundaries of their ownership and control.

¶ 10     In his deposition, Nathu Patel testified that defendants maintained the area surrounding the strip mall, including the roadway and the parking area immediately across from the strip mall. This maintenance consisted primarily of sweeping, clearing trash and plowing snow. Defendants repaved the area behind the strip mall in 2005, an area that was used by the strip mall tenants and not the general public, and the areas to the north and south of the strip mall but never repaved the roadway that ran along the eastern edge of the mall. Defendants also did not repair the pothole in which Caracci fell. There were no signs restricting parking and patrons of the strip mall were free to park in the angled spots across the roadway from the strip mall or anywhere in the Kmart and Jewel parking lots.

¶ 11     The record includes a copy of a permit issued on August 19, 2008, by the village of Franklin Park to defendants for patching deteriorated asphalt and potholes. The record also includes a copy of a contract between a paving service and defendants dated August 14, 2008, for the patching of deteriorated asphalt and potholes in an unspecified parking lot. There is nothing in the record to indicate what parking lot or area the permit and contract covered, and Nathu Patel was not asked about either one during his deposition.

¶ 12     On July 8, 2013, defendants filed a motion for summary judgment on the ground that the fall did not occur on property owned or maintained by defendants but on property owned and maintained by AVG. In response to the motion for summary judgment, Caracci filed the affidavit of a licensed architect, John Van Ostrand. Van Ostrand averred, *inter alia*, that defendants were in possession of and had appropriated the roadway, had voluntarily undertaken a duty to maintain it, created the defective condition, failed to provide a safe means of ingress and egress to the strip mall, and failed to warn patrons of the unreasonably dangerous condition.

¶ 13     The circuit court entered summary judgment in favor of defendants on November 18, 2013. The court noted it was undisputed that the pothole in question was located on property owned by AVG, not defendants. The court further determined that defendants had not appropriated

the property for their own use because the roadway was not the sole means of ingress and egress to the strip mall stores and cleaning and plowing the area did not amount to appropriation. Finally, the court noted that defendants did not have any contractual obligation to maintain the roadway. Caracci timely filed this appeal.

¶ 14                                                    ANALYSIS

¶ 15     Caracci first contends that the trial court erred in denying her motion to strike defendants' amended answer to the first amended complaint. Defendants respond that this is an interlocutory order that is not reviewable on appeal. We disagree.

¶ 16     The appeal from a final judgment "draws in question all prior non-final orders and rulings which produced the judgment." (Internal quotation marks omitted.) *Burtell v. First Charter Service Corp.*, 76 Ill. 2d 427, 433 (1979). A reviewing court may consider an earlier judgment of the trial court where that judgment constitutes a procedural step in the progression leading to the entry of the final judgment from which the appeal has been taken. *Id*. at 436; *Knapp v. Bulun*, 392 Ill. App. 3d 1018, 1023 (2009).

¶ 17     Here, the denial of the motion to strike defendants' amended answer was a procedural step in the progression leading to the entry of summary judgment in favor of defendants. Therefore, we have jurisdiction to consider the order of June 28, 2012. But we nevertheless conclude that the trial court properly denied Caracci's motion to strike.

¶ 18     The denial of a motion to strike or dismiss is within the sound discretion of the trial court. *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 422 (1981). An examination of the record confirms the circuit court's finding that the original answer was not verified. Once a pleading has been amended, an admission made in an unverified original pleading does not constitute a judicial admission. *Knauerhaze v. Nelson*, 361 Ill. App. 3d 538, 558 (2005). Thus, nothing in the original answer constitutes a judicial admission.

¶ 19     Moreover, as the circuit court correctly noted, the amended answer does not contradict the original answer. In the original answer, defendants admitted that they are the owners of the property located at 10207-10237 Grand Avenue and the parking area for the subject premises. The address provided in the original answer corresponds to Lot 5 on the plat of survey. In the amended answer, defendants still admitted that they own the subject property known as the strip mall on Lot 5 and certain parking areas associated with the property, also on Lot 5, but clarified that they do not own the property that is legally described on the plat of survey as Lot 4. Therefore, the amended answer merely clarified the original answer and the circuit court did not abuse its discretion in denying Caracci's motion to strike the amended answer.

¶ 20     Caracci's remaining contentions on appeal challenge the entry of summary judgment in favor of defendants. Summary judgment is appropriate when the pleadings, depositions, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2012); *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). "In determining whether a genuine issue as to any material fact exists, a court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent. A triable issue precluding summary judgment exists where the material facts are disputed or where, the material facts being undisputed, reasonable persons might draw different inferences from the undisputed facts." *Manchester*, 228 Ill. 2d at 417. We review an order granting summary judgment *de novo*. *Id*.

¶ 21    Caracci claims that the circuit court erred in granting summary judgment because genuine issues of material fact exist as to whether defendants appropriated the common area roadway where she fell. As an initial matter, we note that throughout her brief Caracci characterizes the area where she fell as a "common area roadway/walkway." There is nothing in the record to indicate the area in question was anything other than a roadway. The fact that people also walk across it to reach the strip mall does not make it a walkway, any more than the fact that people walk across a parking lot makes it anything other than a parking lot. Characterizing the roadway as a "roadway/walkway" creates unnecessary confusion because there is a covered walkway on the eastern edge of Lot 5 in front of the strip mall stores that is owned and maintained by defendants, while the area where Caracci fell is located in the roadway that runs along the western edge of Lot 4, parallel to the covered walkway on Lot 5. Therefore, we will refer to the area where Caracci fell as a roadway.

¶ 22    It is undisputed that defendants do not own or lease Lot 4, the property on which Caracci fell. Caracci argues, however, that a genuine issue of material fact exists as to whether defendants appropriated the roadway on Lot 4. Because there is no evidence in the record to suggest defendants appropriated the roadway, Caracci's argument has no merit.

¶ 23    As a general rule, a private landowner owes a duty of care to provide a reasonably safe means of ingress and egress from his property but owes no duty to ensure the safe condition of a public roadway abutting that property. *Gilmore v. Powers*, 403 Ill. App. 3d 930, 933 (2010). An exception to this rule exists where an abutting landowner has assumed control of the public roadway for his own purposes. *Id*. "However, an assumption of control for purposes of determining a duty of care must consist of affirmative conduct which prevents the public from using the property in an ordinary manner such as blocking the land, parking on it, or using it to display goods." *Id*.

¶ 24    Although Caracci cites to several cases in support of her position that defendants appropriated the portion of the roadway in question, these cases are inapposite. In *Cooley v. Makse*, 46 Ill. App. 2d 25, 30-31 (1964), the court held that a business owner had appropriated a publicly owned walkway between the sidewalk and the business entrance because it was the sole means of ingress and egress to the business and had no purpose other than to provide access to the business. In *McDonald v. Frontier Lanes, Inc.*, 1 Ill. App. 3d 345, 352 (1971), there was evidence that the business had appropriated a city-owned sidewalk and parkway adjacent to the business by using them both for customer parking and blocking them for normal use. Similarly, in *Friedman v. City of Chicago*, 333 Ill. App. 3d 1070, 1075 (2002), the court held that the business appropriated the public sidewalk in its entirety when it blocked off a portion of the sidewalk for customer seating.

¶ 25    Here, there is no evidence of affirmative conduct on the part of defendants that prevented the public from using the portion of the roadway where Caracci fell in an ordinary manner, nor was that portion of the roadway the sole means of ingress and egress to the stores in the strip mall. In fact, defendants had been granted an easement by SuperValu that allowed strip mall customers to park in the Jewel parking lot in exchange for a maintenance contribution, providing another means of ingress and egress to the strip mall. Moreover, there was evidence of limited parking options on Lot 5 itself. The roadway had not been taken over by defendants for the exclusive use of patrons of the strip mall. There is no evidence that defendants blocked the roadway or interfered in any way with the use of the roadway by the general public. Thus, there is no factual support for Caracci's contention that defendants appropriated the roadway.

¶ 26    Caracci's claim that defendants either appropriated the roadway or assumed a duty to maintain it by hiring someone to remove garbage from the roadway and plow it in the winter is also unavailing. Caracci cites to the Fourth District's decision in *Smith v. Rengel*, 97 Ill. App. 3d 204 (1981), in support of this argument. *Smith* found that a landlord's claimed actions in shoveling snow from and filling holes in a public parkway in front of the landlord's property was sufficient to give rise to a duty to maintain the parkway in a reasonably safe condition. *Id.* at 206. But as noted in *Gilmore*, the First and Second Districts have both rejected the holding in *Smith* as unpersuasive and overly broad. *Gilmore*, 403 Ill. App. 3d at 935-36 (citing *Evans v. Koshgarian*, 234 Ill. App. 3d 922, 926 (1st Dist. 1992), and *Burke v. Grillo*, 227 Ill. App. 3d 9, 15-16 (2d Dist. 1992)). We agree with the holdings in *Gilmore*, *Burke*, and *Evans* that acts of maintenance are insufficient to show appropriation. See *Gilmore*, 403 Ill. App. 3d at 935 (no appropriation of parkway where defendants mowed the parkway grass and raked leaves); *Burke*, 227 Ill. App. 3d at 15-16 (no appropriation where defendants merely mowed grass and shoveled snow); *Evans*, 234 Ill. App. 3d at 926 (no assumption of control where abutting property owner swept, shoveled and salted the parkway).

¶ 27    We also reject Caracci's argument that defendants appropriated the roadway or assumed a duty to maintain it by having the pothole repaired shortly after Caracci's fall. Nothing in the record indicates that defendants repaired the roadway on Lot 4. The permit and the contract included in the record simply refer to the patching of deteriorated asphalt and potholes on unspecified property. Nathu Patel was not questioned specifically about these documents at his deposition but testified defendants had not repaired the pothole in which Caracci fell.

¶ 28    Caracci also contends that defendants breached their duty to provide a reasonably safe means of ingress and egress to the stores in the strip mall, relying on the affidavit of Van Ostrand. As the circuit court noted, Van Ostrand's affidavit is replete with legal conclusions regarding whether defendants owed a duty of care with respect to the area where Caracci fell. It is well settled that an expert witness may not testify with respect to legal conclusions. See, *e.g.*, *Todd W. Musburger, Ltd. v. Meier*, 394 Ill. App. 3d 781, 800 (2009); *LID Associates v. Dolan*, 324 Ill. App. 3d 1047, 1058 (2001); *Sohaey v. Van Cura*, 240 Ill. App. 3d 266, 283 (1992). Van Ostrand's factually unsupported legal conclusions cannot raise a genuine issue of material fact regarding whether defendants breached a duty of care owed to Caracci.

¶ 29    Finally, Caracci contends that defendants breached a contractual duty to maintain the roadway. This argument likewise lacks merit. Caracci has produced no evidence of a contract between AVG or Kmart and defendants regarding the maintenance of Lot 4, which defendants clearly do not own or lease. In fact, the only contract regarding the maintenance of Lot 4 is the lease between AVG and Kmart, the terms of which expressly state that AVG is responsible for maintaining the roadway. Further, a lease agreement between defendants and one of the tenants of the strip mall cannot establish a contractual duty to maintain property that defendants do not own or lease and for which no maintenance agreement between the property owners and defendants has been produced.

¶ 30    Caracci has not shown that a genuine issue of material fact exists that would preclude summary judgment in favor of defendants. Therefore, because defendants do not own or lease the roadway where Caracci fell, did not appropriate the roadway, and had no contractual duty to maintain it, the circuit court properly entered summary judgment in favor of defendants.

¶ 31    Affirmed.