NELLIE M. BURKE, Plaintiff-Appellant, v. NICK GRILLO *et al.*, Defendants-Appellees.
Second District   No. 2—91—0739

Opinion filed April 1, 1992.

Howard S. Miller and Thomas J. Stiberth, both of Howard S. Miller & Associates, of Elgin, for appellant.

Michael Resis and Julie L. Trester, both of Querrey & Harrow, Ltd., of Chicago, and John G. Foreman, of Querrey, Harrow & Callahan, P.C., of Geneva, for appellee Nick Grillo.

Larry A. Mancini and Thomas J. Long, both of O'Reilly, Cunningham, Norton & Mancini, of Wheaton, for appellee City of Elgin.

JUSTICE UNVERZAGT delivered the opinion of the court:

Plaintiff, Nellie M. Burke, appeals from an order of the circuit court of Kane County which granted the motions for summary judgment filed by defendants, the City of Elgin (City) and Nick Grillo. Plaintiff has raised three issues on appeal: (1) whether Grillo, plaintiff's landlord, owed a duty to plaintiff to maintain in a reasonably safe condition the area where she fell; (2) whether the City owed plaintiff a duty to maintain in a reasonably safe condition the area where she fell; and (3) whether the City had constructive notice of the defective condition on the property so that it was not immune from liability pursuant to section 3—102 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act or Act) (Ill. Rev. Stat. 1989, ch. 85, par. 3—102).

Plaintiff filed her complaint against defendants on May 3, 1990. Plaintiff alleged that, on May 12, 1989, she was injured when she fell onto a sidewalk because of a defective condition of the sidewalk. In count I, plaintiff alleged that the City was negligent because it had a duty "to exercise reasonable care and diligence to keep and maintain the public sidewalk in a reasonably safe condition for ordinary use" but "caused or permitted the said sidewalk to be and remain in a poor state of construction in that it was not level with the grade of the area around it so that it was unsafe for public use."

In count II, plaintiff alleged that defendant Grillo "owned, managed, controlled and maintained" the property at 821 Bode Road in Elgin, Illinois. She alleged that he had a duty to keep and maintain his property in a reasonably safe condition but "caused or permitted the property to be and remain in a poor state of construction and disrepair in that he allowed the property to exist with a large difference in grade between the grass and the sidewalk." Plaintiff sought damages for her injuries from both defendants.

Each of the defendants filed an answer to the complaint. Grillo filed a motion for summary judgment pursuant to section 2—1005 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005) on January 4, 1991. Grillo alleged that the area where plaintiff fell was not located upon premises which he owned. He alleged that a plat of survey certified by a registered land surveyor showed that the area of the "dip" was approximately seven feet from his premises. He argued that, as the plaintiff's fall did not occur upon property owned by him, there was no factual issue regarding any duty owed to plaintiff. Grillo attached a copy of a transcript of plaintiff's deposition, taken December 6, 1990, to the motion. He also attached the plat of survey.

The City filed its motion for summary judgment on January 17, 1991. The City argued that it had no duty to maintain its property for pedestrians injured while walking on property outside of designated crosswalks or walkways. It also contended that, even if a duty existed, there was no liability on its part because it did not have actual or constructive notice of the defect as required by section 3—102 of the Act (Ill. Rev. Stat. 1989, ch. 85, par. 3—102). The City attached to its motion a copy of the transcript of plaintiff's deposition, a copy of the transcript of Grillo's deposition, taken November 15, 1990, and the amended affidavit of Melford Dahl.

In her deposition, plaintiff testified that she was 72 years old. She had lived for more than 10 years in an apartment in a 16-unit apartment building located at 821 Bode Road. She baby-sat for her granddaughter, Ryan Burke, while her daughter worked. On the day of the incident, she was outside in front of the apartment building with her granddaughter. Ryan was 5½ years old at that time. Ryan was bouncing a beach ball, and the ball began rolling toward the street. Plaintiff began walking fast to get the ball. Her foot caught in a big dip next to the sidewalk. She fell and fractured her wrist. Plaintiff also stated that her glasses fell off when she fell. She wears glasses because she is nearsighted.

Plaintiff initially stated that she did not know how big the hole was and could not describe the size of the hole. She later indicated, however, that the hole was approximately 2½ to 3 inches deep and was 2½ to 3 feet long. She stated that she walked on the sidewalk in front of her apartment building on a daily basis. She had never noticed the dip prior to the date of the incident "because the grass was growing up there." She did not know anyone who had fallen in that area prior to the May 12, 1989, incident. She testified that Grillo cut the grass in front of the apartment and that Grillo maintained the grass on a regular basis. Grillo or his son shoveled the sidewalk in front of the apartment building.

In his deposition, Grillo testified that he or his son cut the grass at the apartment building. They mowed the part of the lawn which contained the dip. To his knowledge, no one else had ever fallen at that spot.

Photographs of the property were identified by plaintiff during her deposition, and copies of the photographs were attached to the transcript of the deposition. The photographs and the plat of survey show that a sidewalk runs from the front door of the apartment building to the street. There is grass growing on either side of the sidewalk. Another sidewalk runs parallel to and right next to the street in front of the building. A portion of the grassy area next to this sidewalk belongs to the City. Plaintiff pointed out on the photographs that she fell close to the sidewalk next to the street, on the property owned by the City.

Dahl stated in his affidavit that he was city engineer for the City. He further stated:

"2. That in my capacity as City Engineer, I am familiar with the records maintained by the CITY OF ELGIN with respect to defects which were found to exist on property owned by the City.

3. That a review of these records reveals that, prior to May 12, 1989, the CITY OF ELGIN had never received any notice of a defect existing on or about the property owned by the City adjacent to 821 Bode Road and had no actual knowledge of any defect existing at that location.

4. That there are in excess of five hundred (500) miles of sidewalks and parkways in the CITY OF ELGIN."

Plaintiff filed a response to each defendant's motion for summary judgment. Attached to her response to the City's motion were the affidavits of Howard Burke, plaintiff's husband, and Sandra Burke, plaintiff's daughter. Both Sandra and Howard stated that they were

familiar with the area in which plaintiff "alleges to have fallen." Both affidavits also stated that "this area contains a rut approximately two and a half feet long, eight inches wide and four inches deep" and that the rut existed in this area of the premises for more than a year prior to plaintiff's fall. Plaintiff argued that, based on these facts, the City had constructive notice of the condition given the description of the condition and the length of time it existed.

Both defendants filed a reply to plaintiff's argument, and a hearing regarding both defendants' motions for summary judgment was subsequently held. The court granted summary judgment to both defendants. This timely appeal followed.

On appeal, plaintiff first argues that summary judgment should not have been entered in favor of Grillo because the area in which she fell was a common area controlled and maintained by Grillo. She contends, relying on *Smith v. Rengel* (1981), 97 Ill. App. 3d 204, that Grillo therefore owed her a duty to keep and maintain this area in a reasonably safe condition even though it was just beyond the premises actually owned by Grillo.

Grillo argues that summary judgment was properly granted in his favor, noting that summary judgment is proper when the undisputed facts demonstrate that a defendant owed the plaintiff no duty. He asserts that he owed no duty to plaintiff in this cause because the facts established that he did not own the property abutting the public sidewalk or cause the "dip" next to the sidewalk where plaintiff fell. He contends that, under these circumstances, he had no duty to maintain or repair the property which was under the control of a municipality. He relies on *Thiede v. Tambone* (1990), 196 Ill. App. 3d 253, *Dodd v. Cavett Rexall Drugs, Inc.* (1988), 178 Ill. App. 3d 424, and *Schuman v. Pekin House Restaurant & Lounge* (1981), 102 Ill. App. 3d 532.

Summary judgment is a drastic means of disposing of litigation and should be allowed only when the right of the moving party to summary judgment is clear and free from doubt. (*Mitchell v. Jewel Food Stores* (1990), 142 Ill. 2d 152, 165; *Purtill v. Hess* (1986), 111 Ill. 2d 229, 240.) The purpose of a summary judgment proceeding is to determine whether there are any genuine issues of material fact which should be tried. (*Purtill*, 111 Ill. 2d at 240.) In making this determination, the evidence is to be construed strictly against the moving party and liberally in favor of the opponent. *Tersavich v. First National Bank & Trust* (1991), 143 Ill. 2d 74, 80-81.

■ Therefore, the first issue before us is whether a genuine issue of material fact exists regarding plaintiff's claim of negligence against Grillo, precluding summary judgment. To state properly a cause of

action for negligence, a plaintiff must establish that the defendant owed her a duty of care, that there was a breach of that duty by the defendant, and that the plaintiff's injury was proximately caused by the breach. (*Marshall v. City of Centralia* (1991), 143 Ill. 2d 1, 6.) "The question of whether the defendant owed the plaintiff a duty of care is a question of law to be determined by the court." (*Marshall*, 143 Ill. 2d at 6.) In the absence of a showing of facts from which the court could infer the existence of a duty to the plaintiff, no recovery is possible as a matter of law, and summary judgment in favor of the defendant is proper. *Vesey v. Chicago Housing Authority* (1991), 145 Ill. 2d 404, 411.

We therefore agree with Grillo that summary judgment is proper where the court determines, as a matter of law, that the defendant does not owe the plaintiff a duty of care. We also conclude that the trial court correctly determined that Grillo did not owe plaintiff a duty under these circumstances.

We recognize that the court in *Smith v. Rengel* (1981), 97 Ill. App. 3d 204, found that the defendant landlord owed a duty to the guest of one of his tenants under very similar facts. In *Smith*, the guest was injured when he stepped into a hole next to the sidewalk. (*Smith*, 97 Ill. App. 3d at 205.) The hole was located in a boulevard owned by the City of Bloomington.

The court in *Smith* first noted that "where a landlord reserves a portion of his premises for common use with his tenants, he is under a duty to use ordinary care to keep that portion in a reasonably safe condition." (*Smith*, 97 Ill. App. 3d at 205-06.) The *Smith* court then stated that this "duty owed by the landlord has been extended beyond the naked and precise property lines to include means of ingress and egress." (*Smith*, 97 Ill. App. 3d at 206, citing *Cooley v. Makse* (1964), 46 Ill. App. 2d 25, and *McDonald v. Frontier Lanes, Inc.* (1971), 1 Ill. App. 3d 345.) The court then determined that there was evidence in the record that the landlord's wife and son had mowed the grass in the boulevard, had shoveled snow from it, and had filled any holes found in it with dirt. It concluded that "[s]uch evidence of control is sufficient to raise a duty in law on the adjacent landowner to use ordinary care to maintain the boulevard in a reasonably safe condition for his tenants and their invitees and social guests." *Smith*, 97 Ill. App. 3d at 206.

In this cause, also, Grillo and his son mowed the grass and shoveled the snow from the area where the hole was located. However, we decline to hold that these facts alone established a duty on the part of Grillo to maintain property belonging to the City. We conclude that the

court in *Smith* interpreted our decisions in *Cooley* and *McDonald* too broadly.

In *Cooley*, we held that both the operator and the owner of a tavern owed a duty to a patron who fell on a brick walk which was adjacent to the tavern but was owned by the City of La Salle. (*Cooley*, 46 Ill. App. 2d at 32.) The walk ran from the sidewalk along the street to the front entrance of the building. The only purpose of the walk was to provide ingress and egress to the tavern building. (*Cooley*, 46 Ill. App. 2d at 28.) We noted that, based on that fact, the use of this walk was factually much different from that enjoyed by the general public on a normal sidewalk, street or public way. (*Cooley*, 46 Ill. App. 2d at 28.) We recognized the general rule that an owner of land is not liable for injuries occurring upon land not owned or occupied by him, but determined that "[u]nder the peculiar facts of this case \*\*\* the duty of the defendants \*\*\* to their invitees extends beyond naked and precise property lines." *Cooley*, 46 Ill. App. 2d at 30-31.

In *McDonald*, the plaintiff was injured when she stepped into a hole in a parkway owned by the City of Elgin. The parkway was located by a public sidewalk across from the parking lot maintained by the defendant for its tavern and bowling patrons. (*McDonald*, 1 Ill. App. 3d at 348.) We determined that the property owner owed a duty of care to the plaintiff, noting that the evidence revealed that the defendant assumed control of the public sidewalk and parkway for the ingress and egress of its patrons and used the sidewalk for parking purposes, thereby blocking the sidewalk and preventing its normal use. *McDonald*, 1 Ill. App. 3d at 352.

■ The general rule is that an owner or occupier of premises is not liable for personal injuries incurred on a public sidewalk which is under the control of a municipality. (*Schuman v. Pekin House Restaurant & Lounge* (1981), 102 Ill. App. 3d 532, 534.) *McDonald* and *Cooley* have been interpreted as holding that an owner or occupier of premises has a duty to insure that a public sidewalk is safe only when it appropriates the sidewalk for its own use. (*Dodd v. Cavett Rexall Drugs, Inc.* (1988), 178 Ill. App. 3d 424, 432.) We recently agreed with this interpretation in *Thiede v. Tambone* (1990), 196 Ill. App. 3d 253, 260.

In *Thiede*, the plaintiff was a jogger who fell on a portion of the sidewalk which intersected with the driveway of the defendant's apartment building. (*Thiede*, 196 Ill. App. 3d at 255.) We held that the defendant apartment owners did not have a duty to maintain and repair the public sidewalk. (*Thiede*, 196 Ill. App. 3d at 261.) We stated:

> "[T]he record does not establish that defendants affirmatively appropriated or assumed a special use of the sidewalk. There is no

evidence to suggest that defendants prevented the general public from using the sidewalk in any way, or that defendants obstructed the sidewalk, parked on the sidewalk or conducted business thereon. [Citations.] We conclude that defendants did not appropriate the public sidewalk for a special use or business purpose. In the absence of such a conclusion, the law will not impose a duty on defendants to maintain and repair the public sidewalk." *Thiede*, 196 Ill. App. 3d at 261.

We went on to state, however, that an abutting landowner does have a duty to exercise ordinary care not to create an unsafe condition which would interfere with the customary and regular use of the walk. (*Thiede*, 196 Ill. App. 3d at 261-62.) We determined that the plaintiff in *Thiede* had alleged sufficient evidence that the defendants caused the defective condition of the sidewalk to survive the defendants' motion for summary judgment. *Thiede*, 196 Ill. App. 3d at 263-64.

■ In this cause, there is no evidence that Grillo affirmatively appropriated the public sidewalk or the city-owned area beside it for his own use. There is also no evidence that Grillo caused the hole by the sidewalk. Based on *Thiede*, the trial court correctly determined that Grillo did not owe a duty of care to plaintiff. In her reply brief, however, plaintiff argues that *Dodd* and *Thiede* are inapplicable to this situation because they involved plaintiffs injured on public sidewalks rather than a grassy area beside a sidewalk. Plaintiff has not explained why this makes a difference, and we are not persuaded that a landlord has a greater duty regarding city-owned property beside a sidewalk than regarding the public sidewalk itself. We note that *McDonald*, which was relied on by the courts in *Dodd* and *Thiede*, did involve a hole in a parkway. We therefore conclude that our reasoning in *Thiede* is applicable to this situation and decline to follow the broad holding of *Smith*.

Plaintiff next argues that the trial court erred in granting summary judgment in favor of the City. Plaintiff maintains that the City owed her a duty to guard against the condition which gave rise to her fall and that the City had constructive notice of the defect.

■ We recognize that Illinois' courts have held that municipalities have a duty of care to maintain in a reasonably safe condition parkways and other areas intended for limited pedestrian use. (*Marshall v. City of Centralia* (1991), 143 Ill. 2d 1, 9-10; *Torres v. City of Chicago* (1991), 218 Ill. App. 3d 89, 94-95; *Griffin v. Village of Willowbrook* (1991), 212 Ill. App. 3d 211, 213-14.) However, we need not determine whether such a duty existed based upon these facts because we conclude that plaintiff did not establish that the City had notice of the condition as required by section 3—102 of the Act.

■ The tort liability of a municipality is governed by the Tort Immunity Act. (*West v. Kirkham* (1992), 147 Ill. 2d 1, 5; see also *Vesey v. Chicago Housing Authority* (1991), 145 Ill. 2d 404, 411-12.) The purpose of the Act is to protect local governments and their employees from liability arising out of the operation of government, and the Act therefore grants immunities and defenses. (*Vesey*, 145 Ill. 2d at 412, citing Ill. Rev. Stat. 1989, ch. 85, par. 1—101.1.) Section 3—102(a) of the Act provides that a local public entity "shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition." Ill. Rev. Stat. 1989, ch. 85, par. 3—102(a).

Plaintiff argues that, given the description of the condition along with the length of time it existed, the City, through the exercise of due diligence and reasonable care, would have come to know of this condition prior to plaintiff's fall. We cannot agree.

■ Constructive notice under section 3—102(a) of the Act "is established where a condition has existed for such a length of time, or was so conspicuous, that authorities exercising reasonable care and diligence might have known of it." (*Finley v. Mercer County* (1988), 172 Ill. App. 3d 30, 33; see also *Coultas v. City of Winchester* (1991), 208 Ill. App. 3d 238, 240.) The burden of proving notice is on the party charging it. *Pinto v. DeMunnick* (1988), 168 Ill. App. 3d 771, 774.

In arguing that a genuine issue of material fact exists regarding whether the City had constructive notice of the hole which caused plaintiff's fall, plaintiff is apparently relying on the description of the hole she gave in her deposition and the affidavits of Howard and Sandra Burke. The affidavits described the hole as being 2½ feet long, 8 inches wide and 4 inches deep. Both affidavits also stated that the hole existed for more than a year prior to plaintiff's fall. Neither affidavit, however, stated that this rather shallow hole was conspicuous or even that either of the affiants had seen the hole prior to the accident. Plaintiff testified that she did not notice the hole, even though she walked by it on a daily basis, "because the grass was growing up there."

■ We conclude that plaintiff failed to meet her burden to provide facts showing that the City had constructive notice of the condition. As no genuine issue of material fact existed regarding constructive notice, summary judgment was properly granted for the City. We find substantial support for this conclusion in *Pinto*. In that case, the plaintiff fell in a hole on a parkway belonging to the Village of Alsip. The parkway was in front of an apartment building. One of the owners of the building testified that she never saw the hole prior to the accident even though

she mowed and fertilized the lawn five days before the injury. The other owner testified that he filled the hole both times it appeared but did not notice any hole when he mowed the lawn a month or two before the accident. After the accident, the hole was found to be about five or six feet deep. (*Pinto*, 168 Ill. App. 3d at 772-73.) The court stated:

> "Under these circumstances, we find that [the plaintiff] failed to present sufficient evidence that the hole was plainly visible or that the hole was apparent for so long a time prior to the injury to permit an inference that the Village was constructively notified of the existence of the hole. [Citation.] It would be an unreasonable burden to place upon the Village to expect it to inspect for holes in a parkway lawn, absent any notice that a hole existed in the parkway lawn or absent any notice that a defect in one of its systems might cause a dangerous condition on the parkway." *Pinto*, 168 Ill. App. 3d at 775.

We conclude that the same reasoning applies in this cause. Here, as noted, there was likewise no evidence that the hole was plainly visible or that it was apparent for a long time prior to the injury.

In her reply brief, plaintiff argues that, as she is a grandmother in her 70's, her failure to take notice of the defect was due to her poor powers of observation. She contends that it is therefore inappropriate to substitute her observations "with the standard of inspection to which a municipality is held." We find this argument patently without merit. While plaintiff testified that she wears glasses because she is nearsighted, there was no evidence presented by plaintiff that her powers of observation are in any way impaired when she is wearing her glasses. We decline the invitation to assume that the abilities of a 72-year-old grandmother to observe are inferior to those of anyone else.

For the foregoing reasons, we affirm the judgment of the circuit court of Kane County.

Affirmed.

GEIGER and NICKELS, JJ., concur.