# Illinois Official Reports

## Appellate Court

---

### *Barr v. Frausto*, 2016 IL App (3d) 150014

---

| | |
|---|---|
| Appellate Court Caption | KEVIN BARR, Plaintiff-Appellant, v. DEANNA FRAUSTO and THE CITY OF JOLIET, Defendants (The City of Joliet, Defendant-Appellee). |
| District & No. | Third District<br>Docket No. 3-15-0014 |
| Rule 23 order filed Motion to publish allowed<br>Opinion filed | September 2, 2016<br><br>October 13, 2016<br>October 13, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 13-L-355; the Hon. Michael J. Powers, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Adam J. Zayed, of Joliet, for appellant.<br><br>Gregory Smith, of Joliet, and Michael D. Bersani, of Hervas, Condon & Bersani, P.C., of Itasca, for appellee. |

JUSTICE CARTER delivered the judgment of the court, with opinion. Justices McDade and Schmidt concurred in the judgment and opinion.


## OPINION

¶ 1        Plaintiff, Kevin Barr, filed a suit for negligent property maintenance against defendants, Deanna Frausto and the City of Joliet (City), to recover damages for injuries he sustained on City property when he stepped into a hole on a grass-covered parkway and fell. Both defendants filed motions for summary judgment. After hearings, the trial court granted the motions. Plaintiff appeals, but only challenges the trial court's grant of summary judgment for the City. We affirm the trial court's judgment.

¶ 2                                FACTS

¶ 3        In July 2012, plaintiff and his wife went for a morning walk in Joliet, Will County, Illinois, near their home. Plaintiff was wearing running shoes, and he and his wife were walking on the sidewalk at a leisurely pace. A woman who was walking her dog on the same sidewalk approached from the opposite direction. Plaintiff and his wife stepped off the sidewalk and onto the grass-covered parkway (the grassy area in front of or to the side of a house, between the sidewalk and the road). The parkway was located to the side of Deanna Frausto's residence and was owned by the City. While plaintiff was walking on the parkway, he stepped into a hole, fell, and injured his knee or leg.

¶ 4        In May 2013, plaintiff filed the instant negligent property maintenance action against Frausto and the City. The complaint was later amended. During pretrial proceedings, summary judgment was granted for Frausto after the trial court found that she did not owe a duty to prevent harm to others on property owned by the City.

¶ 5        After summary judgment was granted for Frausto, the City filed its own motion for summary judgment. The matter was fully briefed by the parties in the trial court. Attached to the parties' filings were various supporting documents, including several depositions, photographs of the site and of the hole, and the affidavit of plaintiff's expert witness. The evidence presented in those supporting documents can be summarized as follows.

¶ 6        Plaintiff testified in his deposition to many of the background facts set forth above. In addition to those facts, plaintiff stated that the accident occurred on a Sunday morning shortly after 7 a.m. The weather was nice that day, and it was sunny and completely light out. Plaintiff and his wife walked or rode their bikes on that same route about once a week when the weather permitted. Plaintiff and his wife had lived in that area for about six years, and plaintiff was familiar with the area, although he had never walked on that parkway before. Prior to that time, plaintiff had never seen anyone performing maintenance, doing construction, digging, or cutting the lawn on that particular parkway.

¶ 7        As plaintiff and his wife were walking on the sidewalk that morning and the woman was approaching from the other direction with her dog on a leash, plaintiff nudged or told his wife to move over onto the parkway. The dog was not barking, threatening, or menacing in any way, but the woman and her dog were taking up the entire sidewalk. Plaintiff and his wife both moved to the right onto the parkway. Plaintiff was closer to the sidewalk, and his wife was

closer to the road. That summer was very dry, and the grass on the parkway was like straw and was trampled down. As the woman with the dog went past, plaintiff took one or two more steps on the parkway and then stepped into the hole.

¶ 8    Plaintiff was wearing a size 9 or 9½ running shoe at the time and his entire foot and part of his leg went into the hole, up to his ankle or shin. The ground was dry and the hole was not muddy. Plaintiff fell forward and injured his knee or leg. The woman who was walking the dog did not stop, and plaintiff did not know who the woman was. Plaintiff's wife had to help him because he could not pull his foot out of the hole. Plaintiff sat there for a short time while his wife went home and got the van. When she returned, plaintiff and his wife went home, and plaintiff put ice on the injured area. After a short time, plaintiff decided to go to the hospital.

¶ 9    Plaintiff did not know that the hole was there and had no idea how the hole had formed. Plaintiff was unsure whether anything had prevented him from seeing the hole that morning and stated that the grass might have been covering it. Plaintiff insisted that he was watching where he was going at the time of the injury and stated that he had only glanced at the dog for a moment. As a result of the accident, plaintiff missed a significant amount of time from work and suffered some lasting effects from his injury.

¶ 10    Deanna Frausto, the person who owned the house to the side of where the accident occurred, testified in her deposition that she lived at that location for the past 18 years. Frausto and her live-in boyfriend, Michael Trimmer, mowed, raked, and edged the lawn on that particular parkway. Frausto and Trimmer used a push mower to mow the grass in that area. During that time of summer, the weather was very hot and dry, and the grass had patches of brown and green areas. Frausto and Trimmer did not mow the grass as often during that time period because the grass was so dry. Although Frausto owned the house at that location, she did not own the parkway property in front of and to the side of the house.

¶ 11    Frausto first became aware of the hole on the parkway when she received a letter from plaintiff's attorney after the injury occurred. Frausto had no knowledge of the hole in that location prior to receiving the letter and did not notice any other holes in the parkway. Upon checking, Frausto found a hole in the parkway to the side of her house and assumed that it was the hole to which the letter referred. In Frausto's opinion, the hole looked like an oversized snake hole—it was small in width, probably not wide enough for her hand to fit inside of it, but was several inches deep. After she got the letter from plaintiff's attorney, Frausto filled the hole in with dirt.

¶ 12    In the 18 years that Frausto had lived at that location, she had never seen anyone from the City or the utility companies working in the area where the hole was located. Frausto knew that the previous owners had a lot of trees in the yard but did not know if there was ever a tree in the parkway area that had been removed.

¶ 13    Michael Trimmer testified in his deposition that he was Frausto's boyfriend and that he had lived with her at the residence in question for the past seven years. According to Trimmer, he was almost always the person who cut the grass at the residence and was the only person who had cut the grass at the residence that summer. Trimmer never noticed any holes in the parkway to the side of the residence, either before or after the incident in this case. Trimmer had never seen the hole in question or a photograph of the hole and had no idea where the hole was located or what the dimensions of the hole were. Trimmer did not notice an abundance of rabbits on the property and stated that they did not have any snakes on the property. To Trimmer's knowledge, the City had never performed any work on that particular parkway.

¶ 14    James Eggen testified in his deposition that he was the director of public utilities for the City and was responsible for maintaining the City's water and sanitary system. Eggen had been with the City for 22 years and had a bachelor's degree in mechanical engineering and master's degree in structural engineering. According to Eggen, the City owned the parkways and was responsible for overseeing the right-of-way for the streets in those areas through its public works department. The mowing, raking, and general maintenance of the parkway areas, however, were the responsibility of each individual homeowner. Eggen's department did not have a program for periodically inspecting the condition of the parkways for defects. If a complaint was received by the City regarding a dangerous condition on a parkway, the City would send out an inspector to investigate the complaint. Eggen checked his department's records and found no indication that his department had performed any work at the address where the accident took place, at least not for the past four or five years for which the City maintained records. Eggen had seen photographs of the hole and speculated, based on rabbit holes he had found in his own yard, that the hole looked like a rabbit hole.

¶ 15    M. Gordon Brown, plaintiff's expert witness on surveying, architecture, and premises liability, attested in his affidavit that he had reviewed photographs of the site, the relevant depositions, and some of the pleadings and discovery materials. Brown had also conducted an inspection of the site in May 2014. According to Brown, the location of the hole was still evident at the site at the time of his inspection. Brown opined in his affidavit that (1) the hole had been caused by the decaying process—a tree at that location had been cut down, the stump had decayed, and a hole had formed; (2) it appeared that at one time, there had been a row of trees at that location, and the hole was one of five or six holes and indentations that were aligned in a row at that site; (3) the hole in question constituted an unreasonably dangerous condition that was caused by the City; (4) that particular hole had been in existence at that location, in a conspicuous state, for no less than three years; (5) the entire row of holes was conspicuous and would have been conspicuous for at least 3 years prior to the occurrence; (6) it was not possible that Frausto or Trimmer, assuming that they were of sound mind, could have failed to be aware of the presence of the hole; (7) a casual observer of that parkway at the time of Brown's inspection could easily detect the location of the hole and the other holes, simply by looking down in that area; (8) pedestrians, when walking, normally looked forward in the direction of movement and not at the ground just in front of their feet; (9) on the day of the occurrence, it would have been more difficult to observe the hole because the homeowner at that location had been letting the grass grow longer due to the dry summer; (10) the holes on the parkway and the hole giving rise to the occurrence would have or should have been noticed had any City employee walked by the area within three years of the occurrence; and (11) in saying that the hole looked like a rabbit hole, the City's director of public utilities, James Eggen, lacked the knowledge to form a scientific opinion as to the cause of the hole.

¶ 16    A hearing was held on the City's motion for summary judgment in November 2014. After listening to the argument of the attorneys, the trial court took the matter under advisement to give the parties an opportunity to present case law. At the next scheduled court date the following month, the trial court announced its ruling. The trial court found that plaintiff had failed to establish that the City had actual or constructive notice of the allegedly defective condition as was necessary to hold the City liable for the plaintiff's injury. The trial court, therefore, granted the City's motion for summary judgment. Plaintiff appealed.

¶ 18    On appeal, plaintiff argues that the trial court erred in granting summary judgment for the City. Plaintiff contends that summary judgment should not have been granted because genuine issues of material fact existed as to (1) whether the City had constructive notice of the allegedly defective condition (the hole) in the grass-covered parkway and (2) whether the hole constituted an unreasonably unsafe condition. In support of that argument, plaintiff asserts first that the uncontroverted testimony (affidavit) of his expert witness—that the hole was conspicuous and had existed for at least three years—was sufficient to establish a genuine issue of material fact as to the issue of constructive notice, despite any evidence to the contrary. Second, plaintiff asserts that the uncontroverted testimony of his expert witness—that the hole constituted an unreasonably unsafe condition—was sufficient to establish a genuine issue of material fact as to that issue as well. For the reasons stated, plaintiff asks that we reverse the trial court's grant of summary judgment for the City and that we remand this case for further proceedings.

¶ 19    The City argues that the trial court's ruling was proper and should be upheld. In addition to disagreeing with plaintiff's assertions listed above, the City contends first, on the issue of constructive notice, that it would be unreasonable to assume that the City should have discovered the hole in question where the hole was small and went unnoticed by the person (Frausto) who lived at that location and maintained that property for 18 years. To rule otherwise, according to the City, would be to place an unreasonable burden upon the City. Second, as to the issue of an unreasonably unsafe condition, the City contends that the hole in the grass-covered parkway was a customary condition for which the City could not be held liable and that plaintiff should have known that the parkway areas, being comprised of dirt and grass and not concrete, were easily susceptible to changes caused by the weather, animals, or normal erosion and commonly contained holes, bumps, grooves, undulations, and imperfections. For all of the reasons set forth, the City asks that we affirm the trial court's grant of summary judgment in the City's favor.

¶ 20    The purpose of summary judgment is not to try a question of fact but to determine if one exists. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 42-43 (2004). Summary judgment should be granted only where the pleadings and supporting documents, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is clearly entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2014); *Adams*, 211 Ill. 2d at 43. Summary judgment should not be granted if the material facts are in dispute or if the material facts are not in dispute but reasonable persons might draw different inferences from the undisputed facts. *Adams*, 211 Ill. 2d at 43. Although summary judgment is to be encouraged as an expeditious manner of disposing of a lawsuit, it is a drastic measure and should be allowed only where the right of the moving party is clear and free from doubt. *Id.* In appeals from summary judgment rulings, the standard of review is *de novo*. *Id.*

¶ 21    It has long been recognized that a municipality has a duty of care to maintain its parkways in a reasonably safe condition for limited pedestrian use. See *Marshall v. City of Centralia*, 143 Ill. 2d 1, 7-9 (1991). A municipality's tort liability is governed by the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/3-102(a) (West 2014)). *Burke v. Grillo*, 227 Ill. App. 3d 9, 18 (1992). The Act's purpose is to protect local governments and their employees from liability arising out of the operation of government. *Id.*

The Act grants certain immunities and defenses to achieve that purpose. *Id.* The relevant section of the Act in this case, section 3-102, provides, in pertinent part, that a local public entity "shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition." 745 ILCS 10/3-102(a) (West 2014).

¶ 22 In this particular case, there is no dispute that the City did not have actual notice of the hole in the parkway (the allegedly defective condition). The main issue before this court, therefore, is whether the City had constructive notice of the hole. See *id.* Although constructive notice is generally a question of fact to be resolved by the jury, it may be resolved by the trial court as a matter of law when the facts are not in dispute and only one reasonable inference can be drawn from the undisputed facts. *Livings v. City of Chicago*, 26 Ill. App. 3d 850, 854 (1975). For the purpose of section 3-102(a) of the Act, constructive notice is established when a condition has existed for such a length of time or was so conspicuous that public authorities, by exercising reasonable care and diligence, might have known of the condition. *Burke*, 227 Ill. App. 3d at 18. Some of the factors a court considers in determining whether constructive notice exists are the length of time the condition existed and the conspicuity of that condition. *Mtengule v. City of Chicago*, 257 Ill. App. 3d 323, 329 (1993). Lapse of time, in and of itself, may be sufficient reason to impute constructive notice to a public entity under certain circumstances. *Id.* at 328. The party claiming constructive notice has the burden of proving constructive notice. *Burke*, 227 Ill. App. 3d at 18.

¶ 23 Plaintiff in the instant case failed to satisfy that burden. Although plaintiff's expert witness stated in his affidavit that the hole in the parkway was conspicuous and that it had existed for at least three years prior to the incident, the value of that testimony was completely undercut by the plaintiff's own testimony when plaintiff stated that he had traveled that same route on his walk or bike ride once a week for the past several years and that he had never noticed the hole in that parkway. See *Finley v. Mercer County*, 172 Ill. App. 3d 30, 33-34 (1988) (the plaintiffs could not establish for the purpose of avoiding summary judgment that the defect existed for a sufficient time to charge the county with constructive notice of the defect because the plaintiffs' testimony undercut the basic theory of their case). Indeed, plaintiff did not even see the hole on the date of the accident when he was walking on the parkway just before the injury occurred, despite the fact, as he insisted in his testimony, that he was watching where he was going. As for the remaining facts in the record on that issue, the homeowner at that location and her live-in boyfriend both testified that they were not aware of the hole in question, even though they had lived at that location for several years and had maintained the lawn on the parkway during that time period. Although the hole was deep, it was only about the size of a rabbit or a snake hole and was not large enough in diameter for the homeowner to even fit her hand into. Under the circumstances of the present case, we find that plaintiff failed to establish a genuine issue of material fact as to the issue of constructive notice. The trial court, therefore, properly granted summary judgment for the City. See *Burke*, 227 Ill. App. 3d at 17-19 (in a case where a 72-year-old woman was injured when she stepped into a hole, dip, or rut on a parkway next to a sidewalk and fell while chasing after her granddaughter's ball, the appellate court held that summary judgment was properly granted for the city because the plaintiff failed to establish a genuine issue of material fact as to constructive notice, even though the hole in question was about 2½ feet long, 8 inches wide, and 4 inches deep and had existed for over a

year); *Pinto v. DeMunnick*, 168 Ill. App. 3d 771, 774-76 (1988) (in a case where the plaintiff was injured when she fell into a sinkhole on a village parkway, the appellate court held that a directed verdict should have been granted for the village because the plaintiff failed to establish that the village had constructive notice of the hole, even though the hole was six to eight inches in diameter and five to six feet deep, was a reoccurring problem, and had recently reappeared, noting that it would have been "an unreasonable burden to place upon the village to expect it to inspect for holes in a parkway lawn, *** absent any notice that a defect in one of its systems might cause a dangerous condition on the parkway").

¶ 24 Having reached that conclusion, we need not address the City's other contention in support of its argument—that plaintiff failed to establish that the hole in question constituted an unreasonably unsafe condition for the purposes of the Act.

¶ 25                                                    CONCLUSION
¶ 26 For the foregoing reasons, we affirm the judgment of the circuit court of Will County.

¶ 27 Affirmed.