2019 IL App (1st) 181676-U

FIFTH DIVISION
Order filed: October 25, 2019

No. 1-18-1676

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| MICHAEL MARTINO, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 15 L 11577 |
| | ) | |
| PNC BANK, NATIONAL ASSOCIATION, a National | ) | |
| Association; ROARING FORK CAPITAL | ) | |
| PARTNERS, INC., a Colorado Corporation d/b/a | ) | |
| RE/MAX NORTHERN ILLINOIS; ANGEL | ) | |
| AGUILAR; HOMES REALTY OF CHICAGO, INC., | ) | |
| an Illinois corporation, d/b/a REMAX FIDELITY; | ) | |
| ANTONIO AGUILAR; and ILLINOIS PROPERTY | ) | |
| PRESERVATION & REHAB, INC., an Illinois | ) | |
| corporation, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| (PNC Bank, National Association; Homes Realty of | ) | Honorable |
| Chicago, Inc.; and Illinois Property Preservation & | ) | Larry G. Axelrood, |
| Rehab, Inc., Defendants-Appellees). | ) | Judge, Presiding. |

PRESIDING JUSTICE HOFFMAN delivered the judgment of the court.
Justices Rochford and Delort concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm the orders of the trial court denying the plaintiff's late jury demand for failure to establish good cause and finding in favor of the defendants on the plaintiff's premises liability claims for his failure to establish that the defendants had actual or constructive knowledge of an allegedly defective or dangerous condition on the premises.

¶ 2    The plaintiff, Michael Martino, appeals from orders of the trial court of Cook County that denied his late jury demand and entered judgment in favor of the defendants, PNC Bank, National Association (PNC Bank), Homes Realty of Chicago, Inc. (Homes Realty), and Illinois Property Preservation & Rehab, Inc. (Illinois Property), in his premises liability action arising from injuries he sustained while viewing a foreclosed property that he maintains was either possessed, operated, owned, leased, maintained or controlled by the defendants. For the reasons that follow, we affirm.

¶ 3    According to the plaintiff's second amended complaint, on December 11, 2014, he was lawfully viewing the foreclosed residential property located at 2428 Oak Street, Franklin Park, Illinois (property or premises) when he injured his foot by stepping on a rusty nail attached to a piece of wood in the backyard of the property. The plaintiff's 7-count second amended complaint asserted premises-liability claims against each defendant[1]. The plaintiff alleged that the defendants had a duty to exercise "ordinary care and caution for those persons legally on said premises and to keep the premises and walkway near the fenced in backyard in a reasonably safe condition" and to warn of dangerous conditions. Each premises-liability count claimed that the defendants breached their duty by the following acts or omissions: (1) allowing the dangerous condition to exist on the walkway in the backyard; (2) failing to keep and maintain the premises in a "proper and safe condition;" (3) permitting construction debris to remain on the premises or be kept in such a manner as to "constitute a hazardous condition;" (4) failing to inspect the

_____

[1] The plaintiff's original complaint included causes of action against the following defendants: PNC Bank, Roaring Fork Capital Partners, Inc., Angel Aguilar, Homes Realty, Antonio Aguilar, and Illinois Property. However, the only defendants that are still parties to this action are PNC Bank, Homes Realty, and Illinois Property.

premises and keep it free of a "hazardous" and defective walkway; and (5) failing to warn the plaintiff of a dangerous condition. The plaintiff also alleged that he sustained severe and permanent injuries as a direct and proximate result of the defendants' acts or omissions.

¶ 4 The following facts are taken from the pleadings and other filings of record. On May 22, 2015, the plaintiff initially filed a *pro se* action in federal court, requesting a jury trial. *Martino v. PNC Bank*, No. 1:15-cv-04550 (N.D. Ill. 2015). The plaintiff later voluntarily dismissed his federal complaint, and filed his original complaint in the present action on November 12, 2015, without a jury demand. All of the defendants, with the exception of Illinois Property, filed jury demands. On December 9, 2016, the plaintiff filed his second amended complaint, still without a jury demand. On February 21, 2017, the case was set for a trial date of April 30, 2018.

¶ 5 On April 30, 2018, the morning of trial, the defendants moved for three substitutions of judge and waived their jury demands. The plaintiff then sought leave to file his jury demand *instanter*. In support of his motion, counsel for the plaintiff argued that he was "taken completely by surprise" by the defendants' waiver of their jury demands; that his client was deprived of the benefit of both a faster adjudication with a bench trial and his right to a jury trial; and that he lost a significant amount of time drafting jury instructions in preparation for trial and would not have prepared them had he known there would have been a bench trial. The trial court denied the plaintiff's motion, reasoning that the plaintiff failed to show good cause for filing a late jury demand.

¶ 6 The plaintiff testified that on December 11, 2014, he arrived at the property, with his father, Frank Martino and his real estate agent, Gregorio Cirone. While walking through the property, the plaintiff noticed that the kitchen was missing appliances and cabinets and the upstairs bathroom was missing fixtures. When the plaintiff entered the backyard, he noticed that

it was "overgrown" with leaves scattered throughout. He could see the ground through the leaves in some places and he did not observe anything in the backyard that might be a safety hazard.

¶ 7    The plaintiff testified that he was almost at the side of the house where the cement walkway began when he stepped on a nail protruding from a piece of wood. According to the plaintiff, the nail was covered by leaves and he did not see it beforehand. He did not see any other wood, nails, or debris, and did not know how long the piece of wood with the nail had been in the backyard or how it got there.

¶ 8    Frank Martino testified that the backyard was overgrown and "generally messy" with some leaves and branches throughout. According to Frank, the leaves were also on the walkway. Frank noticed what appeared to be construction debris, including white molding and a toilet in the garage; however, he did not see any construction debris in the backyard. Frank testified that he heard the plaintiff scream when he stepped on the nail and saw what he described as a white painted trim molding embedded on the bottom on the ball of the plaintiff's shoe. Frank admitted that he did not know from where the piece of wood with the nail came.

¶ 9    Cirone testified that the property had overgrown grass and leaves covering the backyard. According to Cirone, the leaves were thick enough to cover a small piece of wood with a nail and there were leaves underneath where the plaintiff was standing when he stepped on the nail. However, Cirone did not recall seeing any construction debris in the backyard. Cirone testified that he did not know how long the wood with the piece of nail has been in the backyard, nor did he know how it had gotten there.

¶ 10    Shari Bowman, PNC Bank's REO Asset Manager, who oversees the handling of properties after they have gone through the foreclosure process, testified that she hired Angel Aguilar as PNC Bank's broker agent for the property and that she never visited the property.

After receiving photographs and notes regarding the condition of the property, she asked Homes Realty to conduct an exterior trash removal. However, she did not ask Homes Realty to remove the leaves from the backyard because the photographs did not depict excessive leaves.

¶ 11 Angel Aguilar, the sole owner of Homes Realty, testified that he was assigned the property by PNC Bank and entered into an REO listing and property management agreement with PNC Bank. Angel was tasked with winterizing the property, changing the locks, and making an evaluation on its value. According to Angel, in addition to these assigned tasks from PNC Bank, he recommended that smoke detectors and railings be installed and that an interior and exterior "trash-out" or cleaning be performed. PNC Bank approved these additional tasks. Angel testified that he made no recommendations to clear the leaves from the backyard because he did not think it was necessary. Angel testified that he hired Illinois Property to change the locks and winterize the property. According to Angel, when he met Antonio Aguilar (the president and owner of Illinois Property) on the premises for him to change the locks, he noticed that fixtures and appliances had been removed from inside the property; however, he did not know who had removed them. Angel also testified that he did not see the nail that the plaintiff had stepped on, did not know how it had arrived, or how long it had been on the property. He further testified that had he seen the nail, he would have removed it.

¶ 12 Antonio testified that Illinois Property was hired by Homes Realty to complete maintenance work on the property. According to Antonio, Illinois Property was instructed to change the locks, take pictures, cut the grass, sweep, mop, take out the garbage, and install handrails and smoke detectors. Antonio testified that Illinois Property was not tasked with inspecting the property as it does not perform such inspections. On November 22, 2014, Antonio met Angel at the property to change the locks on the property. That same day, Antonio took

photographs of the garbage in the garage, including what appeared to be a toilet and cabinets. Antonio testified that he did not see anything that appeared hazardous on the property, but if he had seen an obvious hazard, he would have put up a warning. According to Antonio, during his second visit to the property, he completed maintenance work and cut the grass in the front yard because there was no grass to be cut in the backyard. Antonio invoiced Homes Realty for an "exterior trash out" with respect to the garbage in the garage. According to Antonio, he did not complete any work in the backyard because there was "nothing to do." He did not rake the leaves because that was not an assignment in his work order. Lastly, Antonio testified that he did not see anything under or on top of the leaves in the backyard.

¶ 13 Based on the evidence introduced during trial, the court entered judgment in favor of all of the defendants and determined that the plaintiff failed to establish that the defendants had actual or constructive notice of a dangerous condition that caused the plaintiff's injuries.

¶ 14 The plaintiff subsequently filed a post-judgment motion pursuant to section 2-1203 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1203 (West 2014)), contesting the trial court's denial of his jury demand, seeking a re-trial, and arguing that the defendants' violation of a Franklin Park ordinance establishes *prima facie* negligence. The trial court denied the plaintiff's motion and this appeal followed.

¶ 15 On appeal, the plaintiff first argues that the trial court abused its discretion when it denied his motion for leave to file a jury demand. We disagree.

¶ 16 Section 2-1105(a) of the Code of Civil Procedure provides in pertinent part that:

"A plaintiff desirous of a trial by jury must file a demand

therefor with the clerk at the time the action is commenced. A

defendant desirous of a trial by jury must file a demand therefor

not later than the filing of his or her answer. Otherwise, the party waives a jury." 735 ILCS 5/2-1105(a) (West 2014). See also *Charles v. Gore*, 248 Ill. App. 3d 441, 447 (1993).

In the present case, the plaintiff commenced his action on November 12, 2015, when he filed his initial complaint against the defendants. However, it was not until May 2, 2018, after the defendants withdrew their jury demands, that the plaintiff filed his motion for leave to file a jury demand. Therefore, the plaintiff's jury demand, which was filed more than two years after he initiated suit against the defendants, was untimely.

¶ 17    However, Illinois Supreme Court Rule 183 leaves the decision whether to grant a party's late request for a jury trial to the trial court's discretion. Ill. S. Ct. R. 183 (eff. Feb 16, 2011); *Vision Point of Sale, Inc. v. Haas*, 226 Ill. 2d 334, 353 (2007); *In re Estate of Burren*, 2013 IL App (1st) 120996, ¶ 29. A party requesting a late jury demand must establish both good cause for the delay and an absence of prejudice or inconvenience. *Baldassari v. Chelsa Development Group, Inc.*, 195 Ill. App. 3d 1073, 1077 (1990). The trial court's decision whether to allow the filing of a late jury demand will not be overturned on appeal absent an abuse of discretion. *Koehler v. Packer Group, Inc.*, 2016 IL App (1st) 142767, ¶ 36. The trial court is considered to have abused its discretion when a ruling is arbitrary, fanciful, or unreasonable or when no reasonable person would have taken the view adopted by the trial court. *In re Estate of LaPlume*, 2014 IL App (2d) 130945, ¶ 49.

¶ 18    Here, the plaintiff relies on *Hernandez v. Power Construction Co.*, 73 Ill. 2d 90 (1978) to support his argument that he had good cause for filing a late jury demand because the defendants' late waiver of their jury demands caused him to lose both the benefit of a speedier adjudication and a jury trial. Moreover, he argued that there would be no prejudice or

inconvenience to the defendants in granting his late jury demand because they were already preparing for a jury trial. However, we find *Hernandez* distinguishable from this case.

¶ 19    In *Hernandez,* the court noted that jury trials take at least two years longer than bench trials. Therefore, had the plaintiff in *Hernandez* been allowed to proceed on a bench trial as he initially intended, he would have enjoyed the benefit of an earlier adjudication. However, the defendant's jury demand placed the case on a jury track, which consequently, prolonged the duration of the litigation. Therefore, the defendant's withdrawal of the jury demand on the morning of trial denied the plaintiff the benefit of a speedy adjudication and the right to a jury trial. *Hernandez,* 73 Ill. 2d at 96-97.   Here, we have no such issue. The plaintiff has offered no evidence other than his own, unsupported assertions that a jury trial takes longer than a bench trial and consequently, the defendants' last-minute withdrawal of their jury demands denied him a speedy adjudication. This is not sufficient to establish good cause.

¶ 20    Moreover, the lack of prejudice that would result to the defendants by having a jury trial is not sufficient, in itself, to establish good cause for granting a late jury demand. *Greene v. City of Chicago*, 73 Ill. 2d 100, 107 (1978).

¶ 21    The plaintiff also relies on *Vision Point of Sale, Inc. v. Haas*, 226 Ill. 2d 334, 353 (2007) to argue that attorney neglect was another reason that he had good cause, under Rule 183, for his late jury demand. He argues that he requested a jury trial in his *pro se* federal claim, and that his attorney failed to file a jury demand when he filed the same claim in Cook County. *Vision Point* does hold for the proposition that evidence of mistake, inadvertence, or neglect may be considered in the good cause analysis (*Vision Point*, 226 Ill. 2d at 352); however, the record is silent as to whether plaintiff's counsel's failure to file a jury demand was the result of mistake, inadvertence or attorney neglect and not simply trial strategy. Moreover, the fact that attorney

neglect may be present does not automatically equate to a showing of good cause as "what constitutes good cause within this context, *** is fact-dependent and rests within the sound discretion of the circuit court." *Id.* at 353. Accordingly, we find nothing in the record to establish that the circuit court abused its discretion when it denied the plaintiff's motion for leave to file a jury demand because he failed to establish good cause for his late request.

¶ 22   Next, the plaintiff contends that the circuit court's finding that he failed to establish that the defendants' had actual or constructive notice of the defect on the walkway that caused his injuries was against the manifest weight of the evidence. We disagree.

¶ 23   "Pursuant to the theory of premises liability, an owner or occupier of land *** owes a duty of reasonable care under the circumstances to all entrants upon the premises except to trespassers." *Choate v. Indiana Harbor Belt R.R. Co.*, 2012 IL 112948, ¶ 24. In *Genaust v. Illinois Power Co.*, 62 Ill. 2d 456, 468 (1976), our supreme court adopted section 343 of the Restatement (Second) of Torts, which provides:

> "A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger." Restatement (Second) of Torts § 343 (1965).

¶ 24   Therefore, "there is no liability for a landowner for dangerous or defective conditions on

the premises in the absence of the landowner's actual or constructive knowledge." *Tomczak v. Planetsphere, Inc.*, 315 Ill. App. 3d 1033, 1038 (2000). "If the gist of a complaint is that the landowner did not create the condition, the plaintiff must be required to establish that the landowner knew or should have known of the defect." *Id.* Generally, when asserting that a defendant had constructive knowledge of a dangerous condition, the plaintiff "must establish that the dangerous condition existed for a sufficient time or was so conspicuous that the defendant should have discovered the condition through the exercise of reasonable care." *Smolek v. K.W. Landscaping*, 266 Ill. App. 3d 226, 228-29 (1994). "One will be considered to have constructive knowledge if he receives facts that would make the dangerous condition known to any ordinary prudent person." *Stackhouse v. Royce Realty & Management Corp.*, 2012 IL App (2d) 110602, ¶ 30.

¶ 25 In his second amended complaint, the plaintiff alleged that the dangerous condition on the premises was a hazardous walkway, resulting in him stepping on a rusty nail. In his brief on appeal, the plaintiff argues that the defendants knew or should have known that a dangerous or defective condition existed on the walkway because PNC Bank had photographs of the leaves on the property but never requested that Illinois Property remove them and Illinois Property and Homes Realty knew that the property underwent an interior demolition and removal of construction debris, therefore "it was foreseeable that hidden construction debris could injure an invitee." He maintains that the "evidence establishes that the [wood with the nail] was in the backyard for weeks" and therefore, the dangerous condition existed long enough to impute constructive knowledge to the defendants. We disagree.

¶ 26 The plaintiff's assertions are simply unsupported by the record. First, it was not unreasonable that leaves, which presented no apparent threat of harm and that, in places, still

revealed the ground below, were not removed from the backyard. Moreover, no one, not even the plaintiff was able to testify as to where the nail came from, how the nail got into the backyard, or how long the nail was in the backyard. Further, there was no evidence that anyone ever saw the nail. The plaintiff did not see it before stepping on it, neither his father nor Cirone saw it, and neither Angel nor Antonio saw the nail. The evidence establishes that the alleged defect on the property was highly inconspicuous. See *Smolek*, 266 Ill. App. 3d at 229 (noting that where a condition has existed for a considerable period of time, constructive notice cannot exist where the dangerous condition is so well concealed that it is unlikely to be discovered through the exercise of reasonable care); see also *Burke v. Grillo*, 227 Ill. App. 3d 9, 19 (1992). We conclude that, even if the rusty nail in the backyard existed for weeks prior to the accident, it was so inconspicuous that the defendants cannot be charged with knowledge of its existence. Therefore, we find that the circuit court's finding that the plaintiff failed to establish that the defendants' had actual or constructive notice of the rusty nail was not against the manifest weight of the evidence.

¶ 27    The plaintiff also argues that even if he failed to establish that the defendants knew or should have known of the defect on their premises, judgment in the defendants' favor was improper because he was not required to prove that the defendants had notice of the defect. We disagree.

¶ 28    This court, in *Tomczak*, 315 Ill. App. 3d at 1038, stated that "[i]f the gist of a complaint is that the landowner did not create the condition, the plaintiff must be required to establish that the landowner knew or should have known of the defect." See also *Reed v. Wal-Mart Stores, Inc.*, 298 Ill. App. 3d 712, 715 (1998). Therefore, if the defendants caused the defect, the plaintiff need not show that they had knowledge of the defect. In this case, however, there is no evidence

as to how the nail got into the backyard or who caused it to be there. The record reflects that the nail was in the backyard, but evidence of causation is wholly absent and the plaintiff's speculations are insufficient to establish causation on the part of the defendants. *Thacker v. UNR Industries, Inc.*, 151 Ill. 2d 343, 354 (1992). Because the plaintiff has failed to point to any evidence establishing that the defendants' conduct created the defect on the walkway in the backyard (the rusty nail), he was required to show that the defendants' had actual or constructive notice.

¶ 29    Having found that the plaintiff failed to present evidence establishing that the defendants knew or should have known that there was a dangerous condition on the pathway in the backyard, we find that the trial court's ruling in favor of the defendants on the plaintiff's premises liability claims was not against the manifest weight of the evidence. In so holding, we need not reach the plaintiff's arguments regarding whether the defendants breached their duty of care and whether the breach proximately caused his injuries.

¶ 30    Lastly, we address the plaintiff's final argument, that the defendants' violation of the Franklin Park ordinance establishes *prima facie* negligence.

¶ 31    We note that the plaintiff raised this argument for the first time in a post-trial motion and it is therefore, forfeited on appeal. *Caywood v. Gossett*, 382 Ill. App. 3d 124, 134 (2008).

¶ 32    For the foregoing reasons, we affirm the orders of the trial court denying the plaintiff's late jury demand for failure to establish good cause and finding in favor of the defendants on the plaintiff's premises liability claims for his failure to establish that the defendants had actual or constructive knowledge of an allegedly defective or dangerous condition on the premises.

¶ 33    Affirmed.